**Carl Edwin JONES, Appellant,**

v.

**The STATE of Texas, State.**

No. 2–96–436–CR.

Court of Appeals of Texas,
Fort Worth.

July 17, 1997.

Rehearing Denied Aug. 21, 1997.

J. Cort Dehart, William Edmonds, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Michael R. Casillas, Michael Meyer, Alfie Owens, Assistant Criminal District Attorney, Fort Worth, for Appellee.

Before CAYCE, C.J., and LIVINGSTON and HOLMAN, JJ.

### OPINION

HOLMAN, Justice.

A jury convicted Appellant Carl Edwin Jones of driving a motor home while intoxicated and assessed his punishment at a $900 fine and 45 days in the Tarrant County Jail. The court suspended the sentence and placed Appellant on misdemeanor adult probation for 24 months. On appeal, Appellant contends that in obtaining the evidence used against him at trial the police violated his constitutional rights by entering the motor home without a search warrant, with no exi-

gent circumstances or probable cause, and by seizing evidence during the unreasonable search. Finding no reversible error, we affirm.

## Background

The episode began when Appellant went inside a Benbrook auto supply store on Highway 377 and talked to its manager about a part Appellant needed for the cruise control on his motor home, parked outside. The manager, Mark Shannon Tucker, talked with Appellant for five to seven minutes inside the store. Because Mr. Tucker "smelled beer" on Appellant, and because Appellant was staggering, had "real bloodshot" eyes, and became "belligerent," Mr. Tucker believed Appellant was intoxicated. Mr. Tucker accompanied Appellant to the store's parking lot, and they went inside the motor home to look at the cruise control mechanism. While they were inside the motor home, a period of about five minutes, Appellant was drinking beer, and Mr. Tucker saw "several beer cans sitting around." Mr. Tucker later testified that Appellant "was slurring when he was cussing at me."

The total time Mr. Tucker spent with Appellant, both inside the store and inside the motor home was about fifteen minutes. While he was inside the motor home, Mr. Tucker suggested that Appellant take the vehicle to a mechanic. Mr. Tucker went back into the store and watched Appellant drive the motor home across the highway to a Texaco station. Mr. Tucker then telephoned the police and reported the situation "[b]ecause he was drunk [and] I was afraid of what might happen." In the telephone call, Mr. Tucker told police "what [Appellant] looked like," estimated Appellant's age as "late forties, fifties," and described the motor home Appellant was driving. Mr. Tucker gave police his own name during the call. The police dispatcher radioed patrolling Benbrook police officer M.D. Martin, who reached the Texaco station within about three minutes after he was dispatched. Officer Martin did not contact Mr. Tucker, who was still in his store across the highway.

At trial, Officer Martin testified that when he got to the Texaco station, he left his patrol car and walked to the motor home's open door and saw Appellant sitting inside, "very close" to the open door. Because the police dispatcher's description of "a possibly intoxicated driver" was "an older man in a motor home ... stopped at the Texaco," the officer looked through the vehicle's open door, saw Appellant and believed Appellant was that driver. Looking through the open door, the officer saw that Appellant's eyes were "bloodshot" and watery. He also recognized that Appellant's speech was "slurred" and his movements were "sluggish."

It is undisputed that Officer Martin had no warrant, did not see Appellant drive or operate the motor home, and did not see him commit a felony or breach of the peace. When he viewed Appellant through the open door, Officer Martin believed, from the dispatcher's description, that Appellant was the driver of the motor home. There is a dispute as to whether Officer Martin entered the motor home at that time. Appellant argues that Officer Martin went *inside* the motor home, without knocking, to determine whether Appellant was the person described by the police radio dispatch. Officer Martin, however, testified that he plainly saw Appellant simply by walking to the open door and looking inside. From that location, the officer began talking to Appellant in a conversation that lasted "approximately 30 seconds to a minute." On cross-examination, Officer Martin was uncertain whether at some point during that conversation, he had stood with both feet on the first step at the motor home's open door or whether he had always kept one foot on the first step and one foot on the ground.

After that brief conversation, Officer Martin asked Appellant to step outside the motor home, and Appellant complied. Appellant failed three field sobriety tests administered at the scene by another Benbrook police officer, John Sarno. The tests are known as the "walk-and-turn," the "one-leg-stand," and the "fingertip-nose touch" test. After Appellant failed the tests, Officer Sarno arrested him and took him to jail. There, the breath test administered to Appellant showed that his blood alcohol concentration levels were .179 and .190.

At the guilt/innocence phase of the trial, Appellant testified that when the police arrived at his motor home, he was sitting in it, "in front of" its door, drinking beer. It is undisputed that the door was open, and that Officer Martin could see inside the motor home when he approached it. Appellant also told the jury that he was in the motor home and drank one beer there as his brother drove the motor home to the parts store on the day in question. He said he also drank one beer before he left home. Appellant said that on the way to the auto parts store, he bought two twelve-packs of beer and put them inside the motor home. He testified that when he and Mr. Tucker were inside the motor home on the parts store parking lot, he became "irritated" with Mr. Tucker and drank some liquor. At one point in his cross-examination by the prosecutor, Appellant conceded that while he was inside the motor home at the Texaco station, he drank "beers for quite a while and then some moonshine," but then said he only remembered drinking one beer during that interval. In court, both the Texaco station owner, Jamie Stuart Gray, and the parts store manager, Mark Shannon Tucker, identified Appellant as the person who drove the motor home from the parts store to the Texaco station. When Appellant testified, he did not admit driving the motor home on that occasion, nor did he testify that Officer Martin actually came inside the motor home during their "doorway encounter."

### Constitutional Protections

■ A search is an intrusion into an area in which a person has a reasonable expectation of privacy. *See Smith v. Maryland*, 442 U.S. 735, 739–40, 99 S.Ct. 2577, 2579–80, 61 L. Ed.2d 220, 226 (1979); *Katz v. United States*, 389 U.S. 347, 351–53, 88 S.Ct. 507, 511–512, 19 L.Ed.2d 576, 582–83 (1967); *Richardson v. State*, 865 S.W.2d 944, 948–49 (Tex.Crim.App.1993). In the context of the constitutional prohibition against unreasonable search and seizure, however, courts adhere to the premise that citizens have less expectation of privacy in an automobile than in a home. *See South Dakota v. Opperman*, 428 U.S. 364, 368, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000, 1005 (1976). The reduced expectation of privacy applies to motor homes

as well as automobiles. *See Powell v. State*, 898 S.W.2d 821, 827 (Tex.Crim.App.1994) (citing *California v. Carney*, 471 U.S. 386, 393–94, 105 S.Ct. 2066, 2070, 85 L.Ed.2d 406, 414–15 (1985)), *cert. denied*, —— U.S. ——, 116 S.Ct. 524, 133 L.Ed.2d 431 (1995).

■ Here, the State emphasizes that in the absence of a no-trespassing notice, anyone, whether law enforcement officer or private citizen, has the right to openly and peaceably walk up the steps and knock on the front door of a dwelling for the purpose of asking the occupant questions. *See Bower v. State*, 769 S.W.2d 887, 897 (Tex.Crim. App.), (plurality opinion) *cert. denied*, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989), *overruled on other grounds, Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991) (citing *Davis v. United States*, 327 F.2d 301, 303 (9th Cir.1964)). The State reasons that because Appellant was sitting in the motor home near its open door, in plain view of anyone who looked through the doorway, his sluggish movements, bloodshot and watery eyes, and slurred speech, were apparent to any viewer, such as Officer Martin, from outside the open door. Even in a person's home, things knowingly exposed to the public are not protected by the Fourth Amendment. *See Bower*, 769 S.W.2d at 897 (citing *Katz*, 389 U.S. at 351, 88 S.Ct. at 511, 19 L.Ed.2d at 582 and *Rodriguez v. State*, 653 S.W.2d 305, 307 (Tex.Crim.App.1983)). The State argues that because Appellant was sitting just inside the open door of a motor home, we should accord his right to expect privacy an even lower standing than if he had been in his residence, and that Officer Martin, therefore, did not violate Appellant's lawful expectation of privacy by looking through the door. *See Powell*, 898 S.W.2d at 827; *Bower*, 769 S.W.2d at 897.

The United States Constitution provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be

searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

The Texas Constitution states:

The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

TEX. CONST. art. I, § 9.

Although the two constitutional provisions have remarkably similar content, we are not necessarily bound by the United States Supreme Court's interpretation of the Fourth Amendment when we analyze whether article one, section nine of the Texas Constitution applies in a case. *See Heitman v. State*, 815 S.W.2d 681, 690 (Tex.Crim.App. 1991). Part of *Heitman*'s rationale is that, while a state constitution cannot subtract from rights guaranteed by the federal constitution, it can provide additional rights for its citizens. *Id.* In other words, "[t]he federal constitution sets the floor for individual rights; state constitutions establish the ceiling." *LeCroy v. Hanlon*, 713 S.W.2d 335, 338 (Tex.1986). That ordinarily requires us to interpret article one, section nine of the Texas Constitution independently of the federal constitution. *See Johnson v. State*, 864 S.W.2d 708, 717 (Tex.App.—Dallas 1993), *aff'd*, 912 S.W.2d 227 (Tex.Crim.App.1995).

In this appeal, however, we may deem the federal and state constitutional protections identical, because Appellant's brief does not separately argue whether there are any differences in his protections against unreasonable search and seizure under the federal and state constitutions. *See Narvaiz v. State*, 840 S.W.2d 415, 432 (Tex.Crim.App. 1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). In each of his two points of error, Appellant asserts that both his statutory and constitutional rights were violated by unreasonable search and seizure, but his arguments and authorities cite no statutes. Therefore, our opinion will only address Appellant's constitutional challenges.

A warrantless arrest without probable cause is illegal, and the lack of probable cause cannot be cured by bolstering the arrest with evidentiary fruits illegally seized. *See Wilson v. State*, 621 S.W.2d 799, 804 (Tex.Crim.App. [Panel Op.] 1981). But, a police officer may have probable cause for arrest if the totality of the circumstances and reasonably trustworthy information within his knowledge are sufficient to warrant his reasonable belief that a crime has been committed. *See Woodward v. State*, 668 S.W.2d 337, 344–45 (Tex.Crim.App.1982) (op on reh'g), *cert. denied*, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985).

An officer's mere suspicion, hunch, or good-faith perception, without more, is insufficient to constitute probable cause for either an investigative detention or a warrantless arrest, especially if the events of the moment are as consistent with innocent activity as with criminal activity. *See Hoag v. State*, 728 S.W.2d 375, 379 (Tex. Crim.App.1987). Therefore, the State has the burden to prove that there was probable cause to justify a warrantless arrest. *See Stull v. State*, 772 S.W.2d 449, 453 (Tex.Crim. App.1989). And probable cause is a flexible, common-sense standard. *See Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502, 513–14 (1983). In deciding whether there is probable cause to make a warrantless arrest, an officer is entitled to draw upon both law enforcement experience and the totality of circumstances within the officer's knowledge at the time the event is happening. *See Amores v. State*, 816 S.W.2d 407, 413 (Tex.Crim.App.1991).

### Informant Reliability

A police officer may stop and briefly detain a person suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *See Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906–07 (1968); *State v. Sailo*, 910 S.W.2d 184, 187 (Tex.App.—Fort Worth 1995, pet. ref'd). Whether the officer's suspicion of criminal activity is reasonable depends on both the

content and reliability of the information presented to the officer. *See Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301, 309 (1990); *Sailo,* 910 S.W.2d at 188. And to be justified in temporarily detaining a person for further investigation, the officer must have specific articulable facts which, in light of the officer's experience and personal knowledge, together with other inferences from those facts, would reasonably warrant temporary detention for investigation as an intrusion into the detained person's freedom. *See Johnson v. State,* 658 S.W.2d 623, 626 (Tex.Crim.App.1983). The officer must have a reasonable suspicion that some activity out of the ordinary is occurring or has occurred, that the activity is related to a crime, and that the detained person is connected with it. *See id.; Sailo,* 910 S.W.2d at 188. The facts and circumstances that may provide a reasonable suspicion of criminal activity need not themselves be criminal in nature but may include facts that in some way would increase the likelihood of the presence or occurrence of criminal activity. *See Crockett v. State,* 803 S.W.2d 308, 311 (Tex.Crim.App.1991); *Rhodes v. State,* 913 S.W.2d 242, 247 (Tex.App.—Fort Worth 1995), *aff'd,* 945 S.W.2d 115 (Tex.Crim.App. 1997) (mandate issued May 16, 1997).

■■■ Here, the information that led Officer Martin to suspect Appellant originated with Mark Shannon Tucker, when he telephoned the police and gave them a general description of Appellant and the motor home. Mr. Tucker told police that he believed Appellant was intoxicated and that he saw Appellant drive the motor home across the highway to the Texaco station, and Mr. Tucker described the Texaco station as Appellant's current location. Because Mr. Tucker identified himself by name to the police, he was not an anonymous informant. The police dispatcher relayed Mr. Tucker's information to Officer Martin, who arrived on the scene within three minutes of the dispatch. An informant's detailed description of wrongdoing, along with a statement that the informant actually saw the reported event entitles the informant's tip to greater weight than otherwise might be the case. *See Illinois v. Gates,* 462 U.S. 213, 234–35, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983); *Sailo,* 910

S.W.2d at 189. Moreover, Officer Martin was entitled to rely on the information given to the police dispatcher by Mr. Tucker, an identified informant, and relayed to Officer Martin by the dispatcher, if Officer Martin reasonably corroborated the informant's report with other matters within the officer's knowledge. *See Gates,* 462 U.S. at 242, 103 S.Ct. at 2334, 76 L.Ed.2d at 550; *Sailo,* 910 S.W.2d at 189.

■■■ Corroboration by the police officer means that, in light of the circumstances, the officer confirms enough facts to reasonably conclude that the information provided is reliable and a detention is justified. *See White,* 496 U.S. at 330–31, 110 S.Ct. at 2416, 110 L.Ed.2d at 309; *Sailo,* 910 S.W.2d at 189. Here, when Officer Martin' arrived at the Texaco station, he did corroborate enough facts to justify an investigative stop of Appellant.

### Public Intoxication

■■■ The term "public intoxication" applies to a person who appears in a public place while intoxicated to the degree that the person may endanger the person or another. *See* TEX. PENAL CODE ANN. § 49.02(a) (Vernon 1994). The offense is a Class C misdemeanor. *Id.* § 49.02(c). A warrantless arrest for a misdemeanor, such as the DWI offense charged in this case, is not lawful unless the offense is committed in the view or in the presence of the arresting officer. *See* TEX.CODE CRIM. PROC.' ANN. art. 14.01 (Vernon 1977); *Warrick v. State,* 634 S.W.2d 707, 709 (Tex.Crim.App.1982); *Reynolds v. State,* 902 S.W.2d 558, 559 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd). Whenever an intoxicated person is in an officer's presence and there is probable cause to arrest the person for public intoxication, the officer may do so without a warrant, even though a warrantless arrest of that person for the offense of driving while intoxicated would be unlawful. *See Reynolds,* 902 S.W.2d at 559–60.

■■■ Nevertheless, when there is sufficient evidence to support a finding of probable cause to arrest a person for the offense of public intoxication committed in the officer's presence, the arrest is not invalid just be-

cause the officer labels the offense "driving while intoxicated." *See Warrick*, 634 S.W.2d at 709; *Fletcher v. State*, 164 Tex.Crim. 321, 298 S.W.2d 581, 582 (Tex.Crim.App.1957); *Reynolds*, 902 S.W.2d at 560. Where the crime for which a person is arrested (such as DWI) is closely related to a crime for which there was probable cause to believe the person had committed (such as public intoxication in and around a motor vehicle), and there is no proof of sham or fraud, the arrest is valid. *See Warrick*, 634 S.W.2d at 709; *Fletcher*, 298 S.W.2d at 582; *Reynolds*, 902 S.W.2d at 560.

▮ Here, Officer Martin's subjective conclusions as to whether Appellant's intoxication presented a danger to himself are not determinative. *See Collins v. State*, 795 S.W.2d 777, 779 'n. 4 (Tex.App.—Austin 1990, no pet.). We must independently and objectively review the record's facts about Appellant's intoxication at the time he was confronted by Officer Martin. *See id.* The test as to whether probable cause existed for a public intoxication arrest is whether the officer's knowledge at the time of the arrest would warrant a prudent person's belief that an intoxicated suspect was a danger to himself or others. *See id.* After applying that test to the facts shown in the record, we conclude that Officer Martin had probable cause to first detain and then arrest Appellant for public intoxication.

### Conclusion

By sitting inside the motor home in plain view just inside the open doorway, Appellant made himself and his condition clearly visible to Officer Martin while the officer was approaching the home, outside the door. When he reached the door, Officer Martin did not enter the motor home but, at most, stood with either one or both of his feet on the initial step that leads into the interior of the vehicle. Because Officer Martin already had reasonably trustworthy information from the police dispatcher that a known citizen-informant had reported that a person of Appellant's general description appeared to be intoxicated and had driven a motor home fitting the description of Appellant's vehicle across Highway 377, and onto the Texaco station property, and because Officer Martin was able to personally view Appellant from outside the motor home, the officer did corroborate enough facts to give the officer reasonable suspicion that Appellant had been engaged in the criminal activity of public intoxication. Those facts justified the officer asking Appellant to step outside the motor home for further investigation, a *"Terry stop."*

▮ The totality of the circumstances justified Officer Martin in subjecting Appellant to a *"Terry stop"* to determine whether he was intoxicated. *See Terry*, 392 U.S. at 22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. That investigative stop preceded Appellant's arrest and did not violate the Fourth Amendment or article I, section 9 of the Texas Constitution. *See Sailo*, 910 S.W.2d at 189. Upon briefly detaining Appellant for an investigative stop, the totality of circumstances, including Appellant's intoxication and the initial report by a known citizen-informant, rapidly escalated into probable cause to arrest Appellant for public intoxication. *See Mays v. State*, 726 S.W.2d 937, 944 (Tex.Crim.App. 1986), *cert. denied*, 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1020 (1988). Appellant's arrest after the investigative stop was based on probable cause and did not violate the Fourth Amendment or article I, section 9 of the Texas Constitution.

We overrule each of Appellant's points of error and affirm the trial court's judgment.