COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-464-CR
  
  
PERCY 
EDWARD WILSON                                                      APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE 355TH DISTRICT COURT OF HOOD COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
 
I. Introduction
        A 
jury found Appellant Percy Edward Wilson guilty of the offense of manufacture of 
a controlled substance and assessed his punishment at ninety-nine years’ 
confinement and a $10,000 fine.  In his sole point, Wilson complains that 
the trial court erred by denying his motion to suppress.  Wilson claims 
that authorities unreasonably exercised their police power by knocking on his 
door at 4:30 a.m. to obtain consent to search.  We will affirm.
II. Background 
Facts
        In 
January 2003, Robert Young, a deputy sheriff with the Hood County Sheriff’s 
Office, received information indicating that Wilson was illegally manufacturing 
methamphetamine at his residence located at 5505 Firewood Trail.  According 
to Deputy Young, he did not have probable cause to support the issuance of a 
search warrant for the residence based on the information provided, so he 
decided to drive by the residence to see if there were any lights on or if there 
was any activity taking place inside the residence.  At approximately 4:30 
a.m. on January 27, 2003, Deputy Young drove to the residence in his marked law 
enforcement vehicle.  Deputy Young had also driven by Wilson’s residence 
several times prior to this occasion.
        As 
Deputy Young approached the residence in his vehicle, he noticed that a white 
van was parked in front of the residence and that a bathroom light was on inside 
the residence.  Deputy Young testified that the white van’s presence in 
front of the residence signified that someone was inside the residence that 
morning.  He further testified that when he saw the light on inside the 
residence, he believed “that somebody was up,” so he “approached the 
porch, went to the front door[,] and knocked on the front door.”[2]  According to Deputy Young, he did not have to open 
any gates, jump over any fences, or remove any barriers to get to the front door 
of Wilson’s residence.[3]  When Wilson answered 
the door, Deputy Young introduced himself, advised Wilson that he was 
investigating allegations of drug activity at the residence, and asked for 
permission to come inside the residence to speak with him about those 
allegations.  Deputy Young entered the residence only after Wilson 
permitted him to do so.  At that time, Deputy Young explained the 
allegations to Wilson and asked him for consent to search the premises.  
Wilson agreed and signed a consent to search form.[4]
        Deputy 
Young and the other officer then searched every room within the residence, 
excluding Wilson’s bathroom, without uncovering any evidence of illegal drug 
activity.  But when Deputy Young indicated his intent to search Wilson’s 
bathroom, Wilson informed Deputy Young that he needed to go get his shirt 
because he was going to jail.  After Wilson retrieved his shirt from his 
bedroom, he removed a quarter-ounce of methamphetamine from the shirt’s front 
pocket and handed it to Deputy Young.  He also told Deputy Young that he 
had another quarter-ounce of methamphetamine and a “rig kit”[5] in a cabinet under the bathroom sink and that he had a 
shed in the backyard of his residence that he used to manufacture 
methamphetamine for his own personal use.  Based on the January 27 search, 
the Hood County Sheriff’s Office found approximately 17.19 grams of 
methamphetamine and numerous instruments consistent with the manufacture of 
methamphetamine.
        Before 
trial, Wilson filed a motion to suppress all of the evidence obtained in the 
January 27 search.  Following a hearing, the trial court denied the 
motion.  After hearing all of the evidence at trial, a jury convicted 
Wilson of the offense of manufacture of a controlled substance.  This 
appeal followed.
III. Standard 
of Review
        We 
review a trial court’s ruling on a motion to suppress evidence under a 
bifurcated standard of review.  Carmouche v. State, 10 S.W.3d 323, 
327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. 
Crim. App. 1997).  In reviewing the trial court’s decision, we do not 
engage in our own factual review. Romero v. State, 800 S.W.2d 539, 543 
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. 
App.—Fort Worth 2003, no pet.).  At a suppression hearing, the trial 
judge is the sole trier of fact and judge of the credibility of the witnesses 
and the weight to be given their testimony.  Ross, 32 S.W.3d at 
855.  Therefore, we give almost total deference to the trial court's 
rulings on (1) questions of historical fact and (2) application-of-law-to-fact 
questions that turn on an evaluation of credibility and demeanor.  Johnson 
v. State, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); Best, 118 
S.W.3d at 861-62. However, we review de novo a trial court’s rulings on mixed 
questions of law and fact if they do not turn on the credibility and demeanor of 
witnesses. Johnson, 68 S.W.3d at 652-53.  Furthermore, when, as in 
the instant case, the trial court does not make explicit findings of historical 
facts, we view the evidence in the light most favorable to the trial court’s 
ruling and assume that the trial court made implicit findings of fact supporting 
its ruling, so long as those findings are supported by the record.  Carmouche, 
10 S.W.3d at 327-28.
        In 
determining whether the trial court’s decision is supported by the record, we 
generally consider only evidence adduced at the suppression hearing because the 
ruling was based on it rather than evidence introduced later.  Rachal v. 
State, 917 S.W.2d 799, 809 (Tex. Crim. App.), cert. denied, 519 U.S. 
1043 (1996); Green v. State, 78 S.W.3d 604, 608 (Tex. App.—Fort Worth 
2002, no pet.). Nevertheless, this general rule is inapplicable where the 
suppression issue is consensually relitigated by the parties during the trial on 
the merits.  Rachal, 917 S.W.2d at 809; Green, 78 S.W.3d at 
608.  Where the State raises the issue at trial, either without objection 
or with subsequent participation in the inquiry by the defense, the defendant 
has made an election to re-open the evidence, and consideration of the relevant 
trial testimony is appropriate in our review.  Rachal, 917 S.W.2d at 
809.  In the instant case, during trial, the trial court granted Wilson a 
running objection to the evidence at issue during the suppression hearing; 
therefore, we will limit our scope of review to the evidence presented at the 
suppression hearing.  See James v. State, 102 S.W.3d 162, 170 (Tex. 
App.—Fort Worth 2003, pet. ref’d).
IV. Knocking 
Not Unreasonable Exercise of Police Power
        In 
his sole point, Wilson claims the trial court erred by denying his motion to 
suppress because “[a] knock on the door at 4:30 a.m solely to obtain consent 
to search is an unreasonable exercise of police powers.”  The State, 
however, maintains that the trial court properly denied Wilson’s motion 
because Deputy Young acted in a reasonable manner when he knocked on the front 
door of Wilson’s residence and asked for consent to search the premises.
        The 
Fourth Amendment to the United States Constitution protects against unreasonable 
searches and seizures.  U.S. Const. 
amend. IV.  At the core of the Fourth Amendment stands the right of a 
person to retreat into his own home and to be free from unreasonable 
governmental intrusion.  See Silverman v. United States, 365 U.S. 
505, 511, 81 S. Ct. 679, 683 (1961).  Nonetheless, absent express orders 
from a person in possession of property not to trespass, the police are not 
prevented from approaching and knocking upon the front door of a residence for 
the purpose of asking the occupant questions, including asking the occupant for 
consent to search: a “knock and talk.”  See Johnson v. State, 
912 S.W.2d 227, 235 (Tex. Crim. App. 1995); Cornealius v. State, 900 
S.W.2d 731, 733-34 (Tex. Crim. App. 1995); Jones v. State, 949 S.W.2d 
509, 513 (Tex. App.—Fort Worth 1997, no pet.).  This is so because the 
police have the same right as any other person to enter onto residential 
property and walk up to the front door.  Buchanan v. State, 129 
S.W.3d 767, 772 (Tex. App.—Amarillo 2004, no pet.); Nored v. State, 875 
S.W.2d 392, 396 (Tex. App.—Dallas 1994, pet. ref’d).  Moreover, a 
citizen is not required to respond to a knock on the door by opening it.  Rodriguez 
v. State, 653 S.W.2d 305, 307 (Tex. Crim. App. 1983).
        On 
appeal, Wilson appears to argue that a knock at 4:30 a.m. is per se unreasonable 
based on the time alone.  Wilson compares his situation to that of the 
appellant in State v. Peyrani, 93 S.W.3d 384 (Tex. App.—Houston [14th 
Dist.] 2002, pet. ref’d).  In Peyrani, the police suspected that 
marijuana was located at a particular residence but did not knock on the 
residence’s front door.  Id. at 385-86.  Instead, without 
announcing their presence or asking for permission to enter the backyard, which 
was surrounded by a six-foot wooden privacy fence, the police simply walked into 
the residence’s backyard and discovered marijuana.  Id. at 
386.  The court of appeals held that the trial court did not abuse its 
discretion by finding that the police violated the homeowner’s Fourth 
Amendment right against unreasonable searches and seizures by entering the 
fenced-in backyard without a warrant.  Id. at 387.  Peyrani, 
involving the failure to knock and talk, does not control the present knock and 
talk facts.
        Moreover, 
Wilson has cited, and we have located, no case law supporting the proposition 
that the time of the knock, standing alone, is determinative of whether the 
police acted reasonably in exercising their power to obtain consent to 
search.  Instead, the reasonableness of police intrusion is typically 
measured by the totality of the circumstances.  See Florida v. 
Bostick, 501 U.S. 429, 437, 111 S. Ct. 2382, 2387-88 (1991).  
Considering all of the evidence presented at the suppression hearing in the 
light most favorable to the trial court’s ruling, the trial court could have 
determined that because Deputy Young knew from previous drives by Wilson’s 
residence that the presence of the white van meant someone was home; because an 
interior light was on in Wilson’s residence; and because Deputy Young did not 
have to open any gates, jump over any fences, or remove any barriers to get to 
the front door of Wilson’s residence, Deputy Young acted reasonably by 
knocking on the front door of Wilson’s residence and subsequently asking for 
consent to search the premises.  Consequently, because the record does not 
support Wilson’s contention that Deputy Young’s knock on Wilson’s door at 
4:30 a.m. constituted an unreasonable exercise of police power, we overrule 
Wilson’s sole point.
V. Conclusion
        Having 
overruled Wilson’s sole point, we affirm the trial court’s judgment.
 
  
                                                          SUE 
WALKER
                                                          JUSTICE
 
  
PANEL 
B:   DAUPHINOT, GARDNER, and WALKER, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
July 1, 2004


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Wilson testified that he had turned his bathroom light on to use the restroom 
shortly before Deputy Young knocked on his door.  According to Wilson, 
after he went back to bed, he heard someone “beat” on his door, so he went 
to the front door and answered it.  Although Wilson characterized the knock 
on his door as “beating,” the trial court was free to disbelieve Wilson’s 
characterization and to believe that the noise was a mere knock at the 
door.  See State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 
2000).
3.  
Deputy Young testified that another officer accompanied him to Wilson’s 
residence.  According to Deputy Young, as he approached the front door and 
knocked on it, the other officer went around to the back of the residence.  
There is no evidence in the record indicating that Wilson manifested his intent 
to prohibit or restrict access to the backyard by posting signs prohibiting 
trespass or by enclosing the backyard with a locked fence.
4.  
At this time, Wilson also told Deputy Young that he leased the residence and 
showed him of a copy of the lease agreement signifying that he was the primary 
resident.
5.  
According to Deputy Young, a “rig kit” contains the implements necessary to 
inject methamphetamine.