Percy Edward Wilson v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-464-CR

PERCY EDWARD WILSON APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

A jury found Appellant Percy Edward Wilson guilty of the offense of manufacture of a controlled substance and assessed his punishment at ninety-nine years’ confinement and a $10,000 fine.  In his sole point, Wilson complains that the trial court erred by denying his motion to suppress.  Wilson claims that authorities unreasonably exercised their police power by knocking on his door at 4:30 a.m. to obtain consent to search.  We will affirm.

II.  Background Facts

In January 2003, Robert Young, a deputy sheriff with the Hood County Sheriff’s Office, received information indicating that Wilson was illegally manufacturing methamphetamine at his residence located at 5505 Firewood Trail.  According to Deputy Young, he did not have probable cause to support the issuance of a search warrant for the residence based on the information provided, so he decided to drive by the residence to see if there were any lights on or if there was any activity taking place inside the residence.  At approximately 4:30 a.m. on January 27, 2003, Deputy Young drove to the residence in his marked law enforcement vehicle.  Deputy Young had also driven by Wilson’s residence several times prior to this occasion
. 

As Deputy Young approached the residence in his vehicle, he noticed that a white van was parked in front of the residence and that a bathroom light was on inside the residence.  Deputy Young testified that the white van’s presence in front of the residence signified that someone was inside the residence that morning.  He further testified that when he saw the light on inside the residence, he believed “that somebody was up,” so he “approached the porch, went to the front door[,] and knocked on the front door.”
(footnote: 2)  According to Deputy Young, he did not have to open any gates, jump over any fences, or remove any barriers to get to the front door of Wilson’s residence.
(footnote: 3)  
When Wilson answered the door, Deputy Young introduced himself, advised Wilson that he was investigating allegations of drug activity at the residence, and asked for permission to come inside the residence to speak with him about those allegations.  Deputy Young entered the residence only after Wilson permitted him to do so.  At that time, Deputy Young explained the allegations to Wilson and asked him for consent to search the premises.  Wilson agreed and signed a consent to search form.
(footnote: 4)
 Deputy Young and the other officer then searched every room within the residence, excluding Wilson’s bathroom, without uncovering any evidence of illegal drug activity.  But when Deputy Young indicated his intent to search Wilson’s bathroom, Wilson informed Deputy Young that he needed to go get his shirt because he was going to jail.  After Wilson retrieved his shirt from his bedroom, he removed a quarter-ounce of methamphetamine from the shirt’s front pocket and handed it to Deputy Young.  He also told Deputy Young that he had another quarter-ounce of methamphetamine and a “rig kit”
(footnote: 5) in a cabinet under the bathroom sink and that he had a shed in the backyard of his residence that he used to manufacture methamphetamine for his own personal use.  Based on the 
January 27
 search, the Hood County Sheriff’s Office found approximately 17.19 grams of methamphetamine and numerous instruments consistent with the manufacture of methamphetamine. 

Before trial, Wilson filed a motion to suppress all of the evidence obtained in the 
January 27
 search.  Following a hearing, the trial court denied the motion.  After hearing all of the evidence at trial, a jury convicted Wilson of the offense of manufacture of a controlled substance.  This appeal followed.

III.  Standard of Review

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  At a suppression hearing, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. 
Ross
, 32 S.W.3d at 855.
  
Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
Best
, 118 S.W.3d at 861-62.  However, we review de novo a trial court’s rulings on mixed questions of law and fact if they do not turn on the credibility and demeanor of witnesses.  
Johnson
, 68 S.W.3d at 652-53.  
Furthermore, when, as in the instant case, the trial court does not make explicit findings of historical facts, we view the evidence in the light most favorable to the trial court’s ruling and assume that the trial court made implicit findings of fact supporting its ruling, so long as those findings are supported by the record.  
Carmouche
, 10 S.W.3d at 327-28. 

In determining whether the trial court’s decision is supported by the record, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later.  
Rachal v. State
, 917 S.W.2d 799, 809 (Tex. Crim. App.), 
cert. denied
, 519 U.S. 1043 (1996); 
Green v. State
, 78 S.W.3d 604, 608 (Tex. App.—Fort Worth 2002, no pet.).
  Nevertheless, this general rule is inapplicable where the suppression issue is consensually relitigated by the parties during the trial on the merits. 
 Rachal
, 917 S.W.2d at 809;
 
Green
, 78 S.W.3d at 608.  Where the State raises the issue at trial, either without objection or with subsequent participation in the inquiry by the defense, the defendant has made an election to re-open the evidence, and consideration of the relevant trial testimony is appropriate in our review.  
Rachal
, 917 S.W.2d at 809.  In the instant case, during trial, the trial court granted Wilson a running objection to the evidence at issue during the suppression hearing; therefore, we will limit our scope of review to the evidence presented at the suppression hearing.  
See James v. State
, 102 S.W.3d 162, 170 (Tex. App.—Fort Worth 2003, pet. ref’d). 

IV. Knocking Not Unreasonable Exercise of Police Power

In his sole point, Wilson claims the trial court erred by denying his motion to suppress because “[a] knock on the door at 4:30 a.m solely to obtain consent to search is an unreasonable exercise of police powers.”  The State, however, maintains that the trial court properly denied Wilson’s motion because Deputy Young acted in a reasonable manner when he knocked on the front door of Wilson’s residence and asked for consent to search the premises. 

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures.  
U.S. Const. 
amend
.
 IV.  
At the core of the Fourth Amendment stands the right of a person to retreat into his own home and to be free from unreasonable governmental intrusion
.  See Silverman v. United States
, 365 U.S. 505, 511, 81 S. Ct. 679, 683 (1961).  Nonetheless, absent express orders from a person in possession of property not to trespass, the police are not prevented from approaching and knocking upon the front door of a residence for the purpose of asking the occupant questions, including asking the occupant for consent to search:  a “knock and talk.”  
See
 
 
Johnson v. State
, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995); 
Cornealius v. State
, 900 S.W.2d 731, 733-34 (Tex. Crim. App. 1995); 
Jones v. State
, 949 S.W.2d 509, 513 (Tex. App.—Fort Worth 1997, no pet.).  This is so because the police have the same right as any other person to enter onto residential property and walk up to the front door.  
Buchanan v. State
, 129 S.W.3d 767, 772 (Tex. App.—Amarillo 2004, no pet.); 
Nored v. State
, 875 S.W.2d 392, 396 (Tex. App.—Dallas 1994, pet. ref’d).  Moreover, a citizen is not required to respond to a knock on the door by opening it.  
Rodriguez v. State
, 653 S.W.2d 305, 307 (Tex. Crim. App. 1983).

On appeal, Wilson appears to argue that a knock at 4:30 a.m. is per se unreasonable based on the time alone.  
Wilson compares his situation to that of the appellant in 
State v. Peyrani, 
93 S.W.3d 384 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d).  In 
Peyrani
, the police suspected that marijuana was located at a particular residence but did not knock on the residence’s front door.  
Id
. at 385-86.  Instead, without announcing their presence or asking for permission to enter the backyard, which was surrounded by a six-foot wooden privacy fence, 
the police simply walked into the residence’s backyard and discovered marijuana.  
Id
. at 386.  The court of appeals held that the trial court did not abuse its discretion by finding that the police violated the homeowner’s Fourth Amendment right against unreasonable searches and seizures by entering the fenced-in backyard without a warrant.  
Id
. at 387.  
Peyrani,
 involving the failure to knock and talk, does not control the present knock and talk facts.

Moreover, Wilson has cited, and we have located, no case law supporting the proposition that the time of the knock, standing alone, is determinative of whether the police acted reasonably in exercising their power to obtain consent to search.  Instead, the reasonableness of police intrusion is typically measured by the totality of the circumstances.  
See
 
Florida v. Bostick
, 501 U.S. 429, 437, 111 S. Ct. 2382, 2387-88 (1991)
.  Considering all of the evidence presented at the suppression hearing in the light most favorable to the trial court’s ruling, the trial court could have determined that because Deputy Young knew from previous drives by Wilson’s residence that the presence of the white van meant someone was home; because an interior light was on in Wilson’s residence; and because Deputy Young did not 
have to open any gates, jump over any fences, or remove any barriers to get to the front door of Wilson’s residence, 
Deputy Young acted reasonably by knocking 
on the front door of Wilson’s residence and subsequently asking for consent to search the premises.  
Consequently, because the record does not support Wilson’s contention that Deputy Young’s knock on Wilson’s door at 4:30 a.m. constituted an unreasonable exercise of police power, we overrule Wilson’s sole point.  

V. 
Conclusion

Having overruled Wilson’s sole point, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: July 1, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
Wilson testified that he had turned his bathroom light on to use the restroom shortly before Deputy Young knocked on his door.  According to Wilson, after he went back to bed, he heard someone “beat” on his door, so he went to the front door and answered it.  Although Wilson characterized the knock on his door as “beating,” the trial court was free to disbelieve Wilson’s characterization and to believe that the noise was a mere knock at the door. 
See
 
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

3:
Deputy Young testified that another officer accompanied him to Wilson’s residence.  According to Deputy Young, as he approached the front door and knocked on it, the other officer went around to the back of the residence.  There is no evidence in the record indicating that Wilson manifested his intent to prohibit or restrict access to the backyard by posting signs prohibiting trespass or by enclosing the backyard with a locked fence.

4:
At this time, Wilson also told Deputy Young that he leased the residence and showed him of a copy of the lease agreement signifying that he was the primary resident.

5:
According to Deputy Young, a “rig kit” contains the implements necessary to inject methamphetamine.