

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00051-CR

_____

THE STATE OF TEXAS, Appellant

V.

JOHN EDWARD HILL, Appellee

On Appeal from the 402nd Judicial District Court
Wood County, Texas
Trial Court No. 20,504-2008

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

OPINION

This case revolves around a search warrant that authorized officers to search the Wood County residence of John Edward Hill[1] for methamphetamine.[2] The warrant was issued based on a single affidavit[3] that named none of the various informants and did not recite that any of the unnamed informants had provided reliable information in the past.[4] The affidavit did, however, provide a number of allegations suggesting that the drug might be found in the residence. The trial court granted Hill's motion to suppress[5] the methamphetamine and drug paraphernalia that were

---

[1] Hill's residence is on U.S. Highway 69, in Alba, Texas.

[2] As a result of the search, Hill was arrested and later indicted with the first-degree felony offense of possession of a controlled substance (methamphetamine) with intent to deliver in the amount of four grams or more, but less than 200 grams, in violation of Section 481.112 of the Texas Health and Safety Code.

[3] The affidavit, dated August 9, 2008, and signed by Miles Tucker, an officer with the Wood County Sheriff's Office, sought a search warrant for a residence located in Alba in Wood County, based on the belief that methamphetamine would be found at the residence.

[4] *See, e.g., Torres v. State*, 552 S.W.2d 821, 824 (Tex. Crim. App. 1977).

[5] Hill's motion to suppress alleged that the search of his Alba residence was unreasonable and illegal in that it violated the Fourth Amendment to the United States Constitution; Article 1, Section 9 of the Texas Constitution; and Article 18.01 of the Texas Code of Criminal Procedure. Hill claimed that the affidavit on which the warrant was granted lacked probable cause and that the information contained in the affidavit was stale.

2

found in the residence, and the State appeals.[6]  Because the trial court did not abuse its discretion in suppressing the evidence,[7] we affirm that ruling.

A trial court's ruling on a motion to suppress evidence lies within its sound discretion. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Carter v. State*, 150 S.W.3d 230, 235 (Tex. App.—Texarkana 2004, no pet.).  We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Villarreal*, 935 S.W.2d at 138 (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)).

In our review of search-warrant affidavits, great deference is given to the magistrate's determination of the existence or absence of probable cause.  *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004).  Here, as in *Swearingen*, the probable cause claim is also based on a state statute.[8]  When we review a probable-cause claim based on state constitutional and statutory law as well as on the Fourth Amendment to the United States Constitution, we use the deferential standard required by *Illinois v. Gates*, 462 U.S. 213, 234–37 (1983).  *Swearingen*, 143 S.W.3d at 811.  Accordingly, search warrants should not be invalidated by interpreting affidavits in a

---

[6]On appeal, the State contends that the trial court improperly granted the motion to suppress evidence and that the affidavit in question is sufficient to establish probable cause.  The State asks that the suppression order be reversed and that the fruits of the search be reinstated.

[7]After an evidentiary hearing on Hill's motion to suppress evidence, the trial court granted the motion and suppressed all evidence seized in the search. The court issued findings of fact in support of its order.

[8]TEX. CODE CRIM. PROC. ANN. art. 18.01 (Vernon Supp. 2008).

3

"hypertechnical" manner; instead, we should use common sense. *Gates*, 462 U.S. at 236. A search-warrant affidavit must be read in a common-sense and realistic manner. *Cassias v. State*, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986); *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006).

Probable cause to support the issuance of a search warrant exists when "the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued." *Cassias*, 719 S.W.2d at 587. Moreover, to justify the issuance of a search warrant, the affidavit in support thereof must set forth facts sufficient to establish probable cause:

> (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be search for or seized are located at or on the particular person, place, or thing to be searched.

TEX. CODE CRIM. PROC. ANN. art. 18.01(c) (Vernon Supp. 2008).

Reasonable inferences may be drawn from the affidavit. *Wilson v. State*, 98 S.W.3d 265, 271 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). We look to the totality of the circumstances to determine whether the facts set forth in the affidavit are adequate to establish probable cause. *Ramos v. State*, 934 S.W.2d 358, 362–63 (Tex. Crim. App. 1996). Finally, statements made during a suppression hearing do not factor into the probable cause determination. We examine only the four corners of the affidavit to determine whether probable cause exists. *Massey v. State*, 933 S.W.2d

141, 148 (Tex. Crim. App. 1996); *Elardo v. State*, 163 S.W.3d 760, 763 (Tex. App.—Texarkana 2005, pet. ref'd).

The duty of this Court is simply to determine whether, given the totality of the circumstances, the trial court, when viewing the affidavit, had a substantial basis for concluding that probable cause did *not* exist to support the issuance of the warrant. *Gates*, 462 U.S. at 238.

The State contends that the information supplied by the unnamed informants was sufficiently credible and reliable and that, even if it was not, the information provided by said informants was adequately corroborated by surveillance conducted by law enforcement. The State further contends that the trial court erred in granting the motion to suppress on the basis that the information in the affidavit was stale. Because the issue of staleness was not ruled on by the trial court, we do not address it.[9]

Applying the appropriate standard of review and looking only to the four corners of the affidavit, we conclude that the trial court did not abuse its discretion in making its finding.

---

[9]The trial court's findings of fact are as follows:
(1) The officer's testimony regarding what he knew about his informant's reliability is irrelevant if it was not contained in the affidavit;
(2) The affidavit wholly failed to establish the reliability of any informant;
(3) The only remaining ground for supporting probable cause was the affiant's personal observation of vehicles coming and going over a three hour period;
(4) The officer's observation of vehicles at Defendant's house failed to establish probable cause for the search.

The reliability of an informant is important when the information is used to justify a search warrant. *Pool v. State*, 157 S.W.3d 36, 45 (Tex. App.—Waco 2004, no pet.) (citing *Lilly v. State*, 119 S.W.3d 900, 903 (Tex. App.—Eastland 2003, pet. ref'd)). While we recognize that reliability, veracity, and the basis of knowledge are no longer absolutely required to support issuance of a warrant, they are nevertheless highly relevant considerations in the totality-of-the-circumstances analysis. *Gates*, 462 U.S. at 233.

The affidavit in this case shows that all the incriminating information sworn to by Tucker comes from unnamed confidential informants. Hearsay from unnamed informants may be credited by showing the informant has given reliable, credible information in the past. *See*, *e.g.*, *Torres*, 552 S.W.2d at 824; *Cerda v. State*, 846 S.W.2d 533, 535 (Tex. App.—Corpus Christi 1993, no pet.). There is no recitation in the instant affidavit that any of these informants[10] have ever provided reliable, credible information to a law enforcement agency in the past.

Nevertheless, the absence of an allegation of prior reliability is not necessarily prohibitive to a finding of probable cause if the informant's information is otherwise corroborated within the four corners of the affidavit. *Abercrombie v. State*, 528 S.W.2d 578, 583–84 (Tex. Crim. App. 1975). Therefore, we must look elsewhere in the affidavit to determine whether the informant's information is otherwise corroborated.

---

[10]The affidavit does not state the number of informants from whom the incriminating information was obtained. Referenced in the affidavit are "several sources," "three separate parties," two informants of "Investigator Lain," and "an informant."

6

The affidavit signed by Tucker on August 9, 2008, is set forth, in pertinent part, as follows:

Affiant has probable cause for [the belief that methamphetamine was in or on the premises of the Hill residence on U.S. Hwy. 69 in Alba] by reason of the following facts and circumstances: In July of 2008 affiant received information from several sources involving narcotics traffic at a residence located on Hwy 69 West of the Alba Golden School. . . . Affiant was told by three separate parties that they had been to the residence and bought methamphetamine. On August 2nd, I was notified by Investigator Lain that two of his informants had advised him of a residence near the Alba-Golden School which was selling methamphetamine. On each of these occasions the informants have advised that the party selling the methamphetamine is named Johnny. Affiant was again contacted on the 7th, [sic] of August and advised by an informant that he had purchased methamphetamine at the residence located on Hwy 69 the weekend before and knew for a fact that the person he knew at the location "reuped" on Fridays and conducted business on Friday[s] and Saturdays. The informant advised he knew this because he worked for the person he knows as Johnny Walker. The informant advised that he sold methamphetamine for this person and in turn got paid cash and methamphetamine. On the 8th day of August affiant along with other investigators from the Sheriff's Office conducted surveillance on the residence in question. Investigators observed approximately 20 cars come to the residence and leave within a matter of three hours. Each vehicle we observed only stayed a few minutes. These actions are actions typically observed in narcotic activity. I believe this information provided by informants as well as surveillance conducted of the residence would lead a reasonable person to believe there to be narcotics located at the residence. Affiant believes that it is more likely than not that there will be narcotics located in the residence. Affiant further believes there is a need to execute a search warrant without further hesitation due to school beginning in approximately two weeks.

Most of the affidavit's allegations clearly could not support probable cause.

We note that, first, the affidavit cites "several sources" for the general claim that there is narcotics traffic at the residence. We interpret that as a thesis sentence for the allegations that follow. If it was intended to be a specific allegation to help establish probable cause, it wholly fails.

7

Next, the affidavit recounts that "three separate parties" reported to Tucker that they had both been to the residence and had purchased methamphetamine. Presumably, these parties' drug purchases were at the residence, though that is not explicitly set out. The affidavit supplies no date, time, or details concerning any of the purchases. While these three unnamed informants did make admissions against their penal interests, there is no information about the place or time of the reported purchases. That falls short of setting out probable cause. *See Abercrombie*, 528 S.W.2d at 581.

Next, the affidavit indicates that Lain had two unnamed informants tell him that "the residence" was selling methamphetamine and that the seller's name was "Johnny." In this instance, not only were the informants unnamed, they were quoted second hand, and they made no admissions against interest. That falls short of making out probable cause. *See Lowery v. State*, 843 S.W.2d 136, 140 (Tex. App.—Dallas 1992, pet. ref'd).

We will discuss below the affidavit's next allegation—a key allegation we will call the "August 7 allegation"—from one unnamed informant about his purchase of methamphetamine at the residence the previous week.

Finally, the affidavit recounted officers' surveillance of the residence during a three-hour period, during which some twenty automobiles came and went from the residence, each staying only a few minutes, and that such activity was "typically involved in narcotic activity." That does not make out probable cause. Although the fact that known narcotics users frequent a place for brief

8

stretches of time may suffice to corroborate an informant's tip, thus combining to establish probable cause, e.g., *Polanco v. State*, 475 S.W.2d 763 (Tex. Crim. App. 1972), it does not by itself provide more than a reasonable suspicion that contraband may be found there. *Cassias*, 719 S.W.2d at 590.

The State contends that the information received in July from three separate informants[11] is corroborative in and of itself. The State relies on *Wood v. State*, 573 S.W.2d 207 (Tex. Crim. App. 1978), in support of this contention. *Wood* can be distinguished from the instant case because *Wood* involved two named informants corroborating information obtained from an unnamed informant, thus furnishing reliability in regard to the unnamed informant. *See id.* at 216–17. Here, all of the informants are unnamed. We find no authority to support the proposition that "several" unnamed informants, the precise number unknown, can serve to corroborate the statements of each other.

The State contends that because each of the unnamed informants had purchased methamphetamine at the residence in July 2008, each had made an admission against penal interest, a recognized corroborating factor. The State does not point to any specific language in the affidavit in support of its contention. A review of the affidavit reveals an allegation that "affiant was told by three separate parties that they had been to the residence and bought methamphetamine." There is no specific allegation in the affidavit that the "three separate parties" purchased the methamphetamine

---

[11]The State acknowledges that the "three separate parties" could be the same informants referenced in the preceding paragraph of the affidavit as "several sources" or they could be three different informants.

9

in July 2008. This statement does not indicate when the purchase took place or from whom the purchase was made.

In *Abercrombie*, the trial court examined a statement from an unnamed informant to the effect that "in the past he had handled and smoked marijuana." 528 S.W.2d at 581. The court determined that this statement, without more, does not furnish sufficient underlying circumstances to warrant a finding that the unnamed informant was credible and reliable. *Id.* We find the same to be true of the statement quoted above.

We now turn to the August 7 allegation, which alleges that "affiant was again contacted on the 7th of August and advised by an informant that he had purchased methamphetamine at the residence located on Hwy. 69 the weekend before."[12] This allegation comes closest to making out probable cause. It is an admission against interest of the informant and mentions the place and at least an approximate time period within which the reported purchase occurred. An admission against penal interest, even by a first-time informant, is a factor indicating reliability. *Mejia v. State*, 761 S.W.2d 35, 38 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd).

The State relies on *Mejia*, among other cases, in support of its claim that the admission against penal interest strongly validates the information provided by the unnamed informant. All of

---

[12]This portion of the affidavit also states that this informant "sold methamphetamine for this [Johnny Walker] person and in turn got paid cash and methamphetamine." The same informant also was quoted as reporting that the person at the residence "re-ups" on Fridays. These latter portions of this report, though interesting, do not make out probable cause due to their lack of specificity as to time and place.

those cases, however, involved significant additional corroborative factors.[13] We, therefore, consider the validation value of this admission against penal interest in conjunction with the totality of the information provided in the affidavit.

The State further claims the information provided in the affidavit is sufficiently detailed to create a reasonable inference of probable cause. As discussed previously, the affidavit in question is silent as to prior reliability of the unnamed informants. We, therefore, look to other factors that may be considered when evaluating a first-time informant's reliability and credibility. These factors include the presence or absence of a criminal record, employment history, and reputation in the community. *See Abercrombie*, 528 S.W.2d at 583–84; *Bellah v. State*, 641 S.W.2d 641, 643 (Tex. App.—El Paso 1982), *aff'd*, 653 S.W.2d 795 (Tex. Crim. App. 1983). The instant affidavit does not set forth any of these factors.

*Abercrombie* held that, in a case with many similarities to the one before us, there was probable cause because the affidavit was very detailed in describing the drug found, its handling by

---

[13]*See, e.g.*, *Hennessy v. State*, 660 S.W.2d 87, 91 (Tex. Crim. App. [Panel Op.] 1983) (named informant carrying tape recorder concealed on his person with transmitting device, transmitting all conversation regarding imminent armed robbery to police officer; informant and others arrested before the robbery provided extensive detail regarding the presence of drugs inside the residence to be robbed); *Mejia*, 761 S.W.2d 35 (named informant caught red-handed and admitted to participation in a criminal activity may be considered reliable); *Abercrombie*, 528 S.W.2d 578 (unnamed informant admitted to possession and delivery of marihuana the previous day with specific detail; affidavit provided such detail and minute particularity that it could reasonably be inferred that informant gained his information in a reliable way and was sufficiently incriminating); *Lowery*, 843 S.W.2d 136 (acknowledging that admission against penal interest is factor indicating reliability, but finding affidavit lacked probable cause).

11

the informant, and its delivery to defendant Abercrombie. The *Abercrombie* court ultimately held—in an opinion on rehearing reversing its previous holding—that the affidavit provided "such detail and minute particularity" in setting out the facts, the magistrate was therefore reasonable in inferring that the informant gained his or her "sufficiently incriminating" information in a reliable way. *See Abercrombie*, 528 S.W.2d at 585.

Here, the affidavit's recitation of the August 7 allegation does not contain "such detail and minute particularity" found in *Abercrombie*. Thus, it was not an abuse of discretion of the trial court to reject an inference that the August 7 informant gained his information in a reliable way.[14] *See id*. The only information that was close to the detail provided in *Abercrombie* was that the informant "had purchased methamphetamine at the residence located on Hwy 69 the weekend before." While the informant also advised that "he knew this because he worked for the person he knows as Johnny Walker . . . [and] that he sold methamphetamine for this person and in turn got paid cash and methamphetamine," there is no physical description of the person known as "Johnny Walker" and no mentioned investigation of this possible alias or any check of property records for the listed property

---

[14]For example, there is no mention of details surrounding the basis for the statement regarding "narcotics traffic" activity; there is no mention of how the unnamed sources became aware of the drug trafficking activity or when in relationship to the July 2008 disclosure this activity was alleged to have occurred. Again, the statement by "three separate parties" that they had been to the residence to buy methamphetamine does not include information disclosing how these sources learned of this information or when this information was reported to law enforcement. The affidavit is silent with respect to when these transactions occurred and is silent regarding the identity of the person from whom methamphetamine was purchased. This person is only identified as "Johnny" or "Johnny Walker," and no physical description is provided.

to determine whether someone by that name resided on the property. The affidavit does not include information which would confirm that the residence disclosed by the informant who "worked for the person he knows as Johnny Walker" was indeed the same residence referenced by the other unnamed sources.

Moreover, the affidavit does not identify the suspect believed to be living in the residence identified in the affidavit. The court in *Davis v. State*, 144 S.W.3d 192 (Tex. App.—Fort Worth 2004, pet. ref'd), dealt with a similar issue. *Davis* involved an affidavit containing information from an unknown, and untried, confidential informant which claimed that two identified people at a certain residence were in possession of and growing marihuana. The affidavit failed to state whether either of the individuals owned or controlled the house. *Id.* at 199–200. Corroboration by the police officer of the suspects' identities included identifying "Barbara Lynn Davis" through a driver's license check with the Texas Department of Public Safety and a "NRH computer check" to tie "Barbara Lynn Davis" to the residence in question. The affidavit failed to state that "Barbara Lynn Davis" was the same person as "Barbara Davis" named by the confidential informant or the same as appellant, "Barbara Jean Davis." Similar information was obtained by the officer on the second suspect. *Id.* at 199. This effort on the part of the investigating officer did not amount to verification of the identity of the individuals who resided in the house. *Id.* at 200. The failure to undertake verification diminishes the reliability of the information provided under the "totality of the circumstances" when

13

an informant is used for the first time and his or her identity is confidential.  *Id.*; *see Lowery*, 843

S.W.2d at 141–42.

In this case, the affidavit does not set forth the identity of any individual believed to be living

in the residence.  It merely states that the informant sold methamphetamine for a person he knows as

Johnny Walker.  No effort was made to determine whether a person named Johnny Walker resided

in the trailer described in the affidavit.  Further, the affidavit fails to make a connection between the

residence and the appellee in this case, John Edward Hill.

The affidavit here does not contain the level of detail necessary to require the trial court to

have credited the information provided by the unnamed informants.  But the affidavit also recounts

the police surveillance.

While information from an unnamed informant alone may not establish probable cause, the

informant's tip, combined with independent police investigation, may provide a substantial basis for

the probable-cause finding.  *Elardo*, 163 S.W.3d at 767–68.  Corroboration by independent police

investigation means that "in light of the circumstances, the officer confirms enough facts to

reasonably conclude that the information provided is reliable and a detention is justified." *Jones v.*

*State*, 949 S.W.2d 509, 515 (Tex. App.—Fort Worth 1997, no pet.).  Corroboration of only innocent

details is usually insufficient.  *Davis*, 144 S.W.3d at 200.

In this case, the State contends that the surveillance performed by Tucker (in conjunction with

the other information contained in the affidavit) for a period of three hours, in which he observed

14

approximately twenty cars come and go from the residence in question, is sufficient to provide a substantial basis for a finding of probable cause. The reliability and credibility of the information provided by the unnamed informants is virtually nonexistent. The question here is whether Tucker's surveillance confirms sufficient facts to reasonably conclude the information already provided in the affidavit is reliable. *See Jones*, 949 S.W.2d at 515. The facts confirmed are merely that on Friday, August 8, at some unknown time of day, approximately twenty vehicles came and left the residence within a span of approximately three hours. Nothing else was observed by Tucker suggesting narcotics activity, and no effort was made by law enforcement to confirm that any of the occupants of the twenty or so vehicles leaving the property had just purchased methamphetamine.

In *Cassias*, the court held that it was unreasonable to base a finding of probable cause to search a residence on an affidavit that did little more than note "apparently innocent activity" during surveillance of the subject property. 719 S.W.2d at 587. The alleged corroborative statement in the *Cassias* affidavit most closely resembling the information provided by Tucker was: "[T]his information has been checked out by affaint [sic] and surveillance began since March 31, 1980, by affaint [sic]. Affaint [sic] has also observed several narcotic users in and out of 724 Del Mar, staying for brief periods of time." *Id.* While the court questioned the basis for the affiant's knowledge that those observed were narcotics users, this information did not provide anything more than a reasonable suspicion—not probable cause—that contraband could be found there. *Id.* at 589–90.

15

In this case, the alleged corroborative statements of Tucker do not identify any of those coming and going from the trailer as "narcotics users," nor do they attempt to identify any of these individuals. While Tucker opines in a conclusory manner that "these actions are typically observed in narcotics activity," his statements do nothing more to suggest that any illegal substances were purchased by the occupants of the subject vehicles. The affidavit's recitations of police surveillance do not provide information requiring the trial court to find probable cause. Probable cause does not arise by virtue of the fact that several people, whose identity, reliability, credibility, or basis of knowledge is unestablished, gave officers information concerning criminal activity. *Lowery*, 843 S.W.2d at 141. The affidavit in question does not contain information mandating a finding of probable cause. Under the totality of the circumstances, and according great deference to the trial court's determination of a lack of probable cause, we hold that the trial court did not abuse its discretion in granting Hill's motion to suppress.

We affirm the ruling of the trial court.


Josh R. Morriss, III
Chief Justice


Date Submitted:      August 31, 2009
Date Decided:       October 16, 2009

Publish

16