Opinion filed November 18,
2010

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                    Nos. 11-09-00252-CR & 11-09-00253-CR 

                                                    __________

 

                           BENNY
LEE MONTGOMERY, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 238th District Court

 

                                                          Midland
County, Texas

 

                                       Trial Court Cause
Nos. CR34857 & CR34858

 



 

                                            M E M O R A N
D U M   O P I N I O N

 

            The
jury convicted Benny Lee Montgomery of the offense of tampering with physical
evidence[1]
and the offense of possession of less than one gram of cocaine.[2] 
Finding the enhancement allegations to be true, the jury assessed punishment at
confinement for forty years for the tampering offense and confinement for
twenty years and a fine of $10,000 for the possession offense.  In the
tampering case, we reverse and remand; in the possession case, we affirm.  

Issues

            Appellant
presents three issues for review.  In the first issue, he contends that the
trial court abused its discretion in denying appellant’s motions to suppress
because police entered the motel room without a warrant and without consent. 
In the second issue, appellant argues that the trial court abused its
discretion in admitting evidence from appellant’s hospital visit.  In his final
issue, appellant argues that the trial court abused its discretion in admitting
the portion of his medical records that revealed a diagnosis of substance
abuse. 

Background
Facts

            Midland
Police Officer Dylan Hale was investigating a tip called in to Crime Stoppers regarding
the sale of narcotics.  The tipster identified a specific residence in Midland,
two pickups, and women named “Rene” and “Sylvia” as being involved.  Officer
Hale then received information from a second tip that Rene was staying at the
Luxury Inn in room number 6 or 7.  Early in the morning on Saturday, January
26, 2008, Officer Hale drove to the Luxury Inn to follow up on the tip.  When
he arrived, there was a car parked in front of room number 5, but no vehicle
parked in front of room number 6 or 7.  Officer Hale left but, shortly
thereafter, passed one of the pickups identified in the tip.  Officer Hale
turned around and followed the pickup to the Luxury Inn.  The driver of the
pickup got out and knocked on the door to room number 5.  Officer Hale identified
the driver as Timothy Allen Buretz.  Buretz told the officer that he was trying
to wake up his niece, “Rene Wood,” so he could drive her to work.  The
passenger in the pickup, who seemed nervous, approached Officer Hale and
identified herself as Mary Patricia Scott.  A female who had been in room number
5 opened the door and came outside, leaving the door open.  She identified
herself as “Rene Loudd.”  Buretz revealed that he had given Officer Hale an
incorrect last name for his niece.  At that time, Officer Hale called for
backup, patted down Buretz, and placed Buretz in handcuffs for safety reasons. 
Loudd informed Officer Hale that “Benny” was still in the motel room.  Sergeant
Land arrived and “posted up on the door for officer safety.”  Dispatch later
advised that Scott had an outstanding arrest warrant from Liberty County for
insufficient funds.  Officer Hale told Scott she was under arrest and asked
Scott if she had anything illegal on her.  Scott told the officer that she had
a “one hitter” (drug paraphernalia) in her pocket.  According to Officer Hale,
“At that point it was apparent the severity of the situation was growing.” 
Officer Hale asked another officer to watch Scott while he checked the room.  

Officer
Hale and Sergeant Land yelled for “Benny” to come out “now” with his hands up, and
then they entered the room with their pistols drawn to conduct a “security
sweep” and to keep the occupant of the motel room from “barricading himself” or
“destroying evidence.”  They proceeded to the bathroom, and Officer Hale opened
the bathroom door.  Inside the bathroom, they observed a naked man sitting on
the toilet.  Officer Hale ordered the man (appellant) to get out of the
bathroom and not to flush the toilet again.  Appellant, instead, attempted to flush
the toilet and stuck one of his hands, which contained something white, down in
the toilet.  Appellant also put something white in his mouth, chewed it, and
swallowed it.  A scuffle ensued, and appellant was arrested for tampering with
evidence.  In the toilet, Officer Hale observed cloudy water and a “corner
baggie.”  When asked what he had swallowed, appellant told the officers, “It
was only residue.”  After placing appellant under arrest, Officer Hale obtained
verbal consent from Loudd to search the motel room, which had been rented in
her name.  During the search of the room, three rocks of crack cocaine,
weighing .22 grams, were found in the nightstand and a crack pipe was found in
appellant’s jacket.  

Motions
to Suppress

            The
record shows that appellant filed a motion in each case to suppress evidence
relating to and stemming from his unlawful detention and arrest and from the
illegal search that was conducted without probable cause or reasonable
suspicion.  The trial court held a hearing on the suppression issues and
subsequently entered a letter order denying appellant’s motion to suppress;
however, the only cause number shown on the letter order was that of the
possession case.  In the letter order, the trial court made findings of fact
and concluded that “the officers had reasonable suspicion that unlawful
narcotic activity certainly was underway in room 5” and that “the entry into
the room by police and the arrest of [appellant] was lawful.”  Though appellant
may not have received a pretrial ruling on his motion to suppress in the
tampering case, he did preserve the suppression issue by obtaining a ruling
during the trial on the merits.[3] 
At trial, prior to any testimony concerning appellant or the officers’ entry
into the motel room, appellant objected, asserting “the same objections” as he
had made at the pretrial hearing.  The trial court overruled appellant’s
objection and permitted him to have a running objection.

We review a trial court’s ruling on a motion to suppress
under a bifurcated standard of review.  Valtierra v. State, 310 S.W.3d 442, 447
(Tex. Crim. App. 2010); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  First, we afford almost total deference to a trial court’s
determination of historical facts.  Valtierra, 310 S.W.3d at 447.  The trial court is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony.  The trial court is entitled to believe or disbelieve all or part
of a witness’s testimony – even if that testimony is uncontroverted.  Id. 
Second, we apply a de novo standard of review to a trial court’s application of
the law of search and seizure to the facts, and we will sustain the trial
court’s ruling if it is “reasonably supported by the record and is correct on
any theory of law applicable to the case.”  Id. at 447-48.  

A.     Initial
Entry/Sweep.  

An
occupant[4]
of a motel room is entitled to constitutional protections against unreasonable
searches and seizures with respect to the motel room.  Stoner v. California,
376 U.S. 483 (1964); Moberg v. State, 810 S.W.2d 190, 194 (Tex. Crim.
App. 1991).  The entry into a residence (or motel room) by police officers constitutes
a “search” for purposes of the Fourth Amendment.  Valtierra, 310 S.W.3d at
448.  When such an entry is made without a warrant, it is presumed to be
unreasonable unless it falls within an exception to the warrant requirement.  Id. 
In order to justify such a warrantless entry or search, the State must show
that it had consent or that both probable cause and exigent circumstances
existed at the time of the entry or search.  Parker v. State, 206 S.W.3d
593, 597 (Tex. Crim. App. 2006); McNairy v. State, 835 S.W.2d 101, 106
(Tex. Crim. App. 1991).  Three categories of exigent circumstances have been
recognized by the Texas Court of Criminal Appeals:  (1) providing aid or
assistance to persons whom law enforcement reasonably believes are in need of
assistance; (2) protecting police officers from persons whom they reasonably
believe to be present, armed, and dangerous; and (3) preventing the destruction
of evidence or contraband.  Gutierrez v. State, 221 S.W.3d 680, 685
(Tex. Crim. App. 2007).  If the State does not establish both probable cause and
exigent circumstances, the warrantless entry cannot withstand judicial scrutiny
under the Fourth Amendment.  Id. at 685-86.  

            The
well-established probable cause standard that applies to a warrantless entry or
search of a specific location is that probable cause exists “when reasonably
trustworthy facts and circumstances within the knowledge of the officer on the
scene would lead a man of reasonable prudence to believe that the
instrumentality of a crime or evidence of a crime will be found.”  Parker,
206 S.W.3d at 597.  Probable cause to cross the threshold of a private
residence may point to the location, but not necessarily a specific person.  Id. 


In
this case, the police were in the initial stages of investigating a Crime Stoppers’
tip regarding the sale of narcotics when Officer Hale went to the motel.  He
did not have probable cause for a search warrant based on that tip, and the
facts and circumstances leading up to the officers’ entry did not give them
probable cause to enter the room.  See State v. Triana, 293 S.W.3d 224
(Tex. App.—San Antonio 2009, pet. ref’d) (no probable cause where police
conducting a narcotics investigation entered motel room through open door after
(1) seeing occupant abruptly cease conversation and enter motel room as police
approached and (2) hearing the toilet flush); see also State v. Steelman,
93 S.W.3d 102, 108 (Tex. Crim. App. 2002) (anonymous tip does not constitute
probable cause).  The arrest of the passenger of the pickup outside the motel
room did not give the officers probable cause to enter the room.  Nothing
connected the passenger to the room.  Furthermore, nothing in our statutes or
constitutional provisions requires any citizen to respond to a knock on his
door by opening it.  Rodriguez v. State, 653 S.W.2d 305, 307 (Tex. Crim.
App. 1983).  The facts and circumstances known to the officers in this case
would not lead a reasonably prudent person to believe that narcotics would be
located in the motel room.  Because probable cause was not present, we need not
reach the second prong of the test requiring exigent circumstances.  The
officers’ warrantless entry into the motel room occupied by appellant was made
without probable cause and without consent and was, therefore, unreasonable.  

In
addition to asserting that exigent circumstances existed, the State asserts
that the entry was justified as a protective sweep.  A “protective sweep” is a “quick
and limited search of premises, incident to an arrest and conducted to protect
the safety of police officers or others.”  Reasor v. State, 12 S.W.3d
813, 815 (Tex. Crim. App. 2000) (quoting Maryland v. Buie, 494 U.S. 325,
327 (1990)).  The Fourth Amendment permits a limited protective sweep “in
conjunction with an in-home arrest” when the officer possesses a reasonable
belief that the area to be swept harbors an individual posing a danger to those
on the arrest scene.  Buie, 494 U.S. at 337; Reasor, 12 S.W.3d at
816.  At the time of the sweep in this case, the only person that had been
arrested was Scott, the passenger in the pickup.  Scott was not arrested in the
motel room, and the State failed to connect her to the room or its occupants.  We
hold that Scott’s arrest outside the motel room did not justify an entry into
or a protective sweep of the room or bathroom.  See Valtierra, 310
S.W.3d at 452 (stating that court of appeals was correct in concluding that
“protective sweep” did not justify officer’s walk down hallway).  

Accordingly,
the trial court erred in denying appellant’s motion to suppress the evidence
obtained as a result of the initial police entry into and sweep of the motel
room.  

B.      Subsequent
Search by Consent.  

After
entering the motel room, conducting a protective sweep, and arresting appellant
for tampering with evidence, police obtained Loudd’s consent to search the
room.  The cocaine that appellant was convicted of possessing was found during
that consensual search.  As the person who rented the motel room, Loudd had
actual authority to consent to the search.  Appellant assumed the risk that
Loudd could consent to a search of the room, and he “may not complain of that
search under the Fourth Amendment.”  See Hubert v. State, 312 S.W.3d
554, 561 (Tex. Crim. App. 2010); see also Luna v. State, 268 S.W.3d 594,
604 n.26 (Tex. Crim. App. 2008).  Furthermore, when the State’s exhibits –
including the cocaine, the crack pipe, and the lab report – were offered into
evidence, appellant’s counsel stated, “No objection” to each exhibit.  An
affirmative statement of “no objection” to the admission of previously
challenged evidence waives any error in the admission of that evidence.  Jones
v. State, 833 S.W.2d 118, 126 (Tex. Crim. App. 1992).  

C.      Harm
Analysis.  

Having
found error in the admission of evidence regarding the officers’ initial
warrantless entry into the motel room, we must next consider, pursuant to Tex. R. App. P. 44.2(a), whether
appellant was harmed by the constitutional violation.  Neal v. State,
256 S.W.3d 264, 284 (Tex. Crim. App. 2008).  Reversal is required unless we can
determine beyond a reasonable doubt that the error did not contribute to the
conviction or punishment.  Chapman v. California, 386 U.S. 18, 24
(1967); Rule 44.2(a).  If there is a reasonable likelihood that the error
materially affected the jury’s deliberations, the error was not harmless.  Jones
v. State, 119 S.W.3d 766, 777 (Tex. Crim. App. 2003).  We must “calculate,
as nearly as possible, the probable impact of the error on the jury in light of
the other evidence.”  Neal, 256 S.W.3d at 284.  In determining the
harmfulness of the admission of evidence in violation of the Constitution, the
Court of Criminal Appeals has declared the following factors to be relevant: 
(1) the importance of the evidence to the State’s case; (2) whether the erroneously
admitted evidence was cumulative of other evidence; (3) the presence or absence
of evidence corroborating or contradicting the erroneously admitted evidence on
material points; and (4) the overall strength of the prosecution’s case.  Langham
v. State, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010); Davis v. State,
203 S.W.3d 845, 852 (Tex. Crim. App. 2006).  We must also consider any other
factor revealed by the record that may shed light on the probable impact of the
trial court’s error on the minds of average jurors.  Clay v. State, 240
S.W.3d 895, 904 (Tex. Crim. App. 2007).  

1.     
Tampering Conviction.  

We
cannot determine beyond a reasonable doubt that the erroneous admission of
evidence obtained from the officers’ initial entry, including Officer Hale’s
testimony as to what he observed when he entered the motel room, did not
contribute to appellant’s conviction for tampering.  That evidence was
important to the State’s case.  The only other evidence that appellant tampered
with evidence came from the DVD that was recorded from Officer Hale’s in-car
camera.  The DVD, which was admitted after appellant’s counsel again affirmatively
stated that he had no objection to the exhibit, contains audio – but no video –
of the officers’ entry and their scuffle with appellant.  The DVD does not show
the motel room or what occurred inside the room and bathroom.  We cannot say
beyond a reasonable doubt that Officer Hale’s erroneously admitted testimony
explaining what occurred as the officers entered the motel room did not
contribute to the verdict.  In light of the other evidence, the erroneously
admitted testimony likely had a material effect on the jury’s deliberations and
appellant’s conviction for tampering with physical evidence.  Consequently, we
sustain appellant’s first issue in Cause No. 11-09-00252-CR. 

2.     
Possession Conviction. 

Analyzing
harm in the possession case poses a more difficult question.  The cocaine was
not obtained during the officers’ illegal entry; it was obtained during a
subsequent search conducted with Loudd’s consent.  The inadmissible evidence
was not important to the State’s case against appellant for possession.  The
cocaine, the crack pipe, and the chemist’s lab report regarding the testing of
the cocaine were all admitted upon appellant’s affirmative statement that he
had no objection to their admission.  In the DVD, which was played for the
jury, Loudd told Officer Hale that appellant had had a sack of cocaine, that he
had given her a piece of cocaine wrapped in plastic, and that she was not sure
what appellant had done with any of the cocaine after her uncle knocked on the
door.[5] 
Appellant’s statement regarding “residue” can be heard on the DVD.  The
evidence also reflected that the crack pipe was found in appellant’s jacket.  In
light of the unimportance of the inadmissible evidence to the prosecution for
possession and the other overwhelming evidence that appellant exercised care,
custody, and control over the cocaine, we find beyond a reasonable doubt that
the erroneous admission of evidence relating to the initial warrantless entry into
the motel room did not contribute to appellant’s conviction or punishment for
the offense of possession of cocaine.  Consequently, we overrule appellant’s
first issue in Cause No. 11-09-00253-CR.  

Evidence
from Hospital Visit

            In
his second issue, appellant argues that the trial court abused its discretion
in admitting evidence from appellant’s hospital visit because the doctors and
nurses acted as law enforcement agents.  The trial court overruled appellant’s
objections to the testimony of the physician who treated appellant after his
arrest, the testimony of the hospital’s medical records custodian, and the
introduction of appellant’s medical records.

            The
record reflects that, because of the struggle and appellant’s ingestion of
something, appellant was taken to the Midland Memorial Hospital Emergency
Department for a medical clearance prior to being taken to jail.  The treating
physician testified that the police explained what had happened at the scene
and requested a medical clearance.  In order to medically clear appellant, the
hospital staff obtained a medical history from him, conducted a physical exam,
and performed a urine drug screen.  The results of the urinalysis were positive
for marihuana and cocaine.  According to the physician, appellant said that he
used crack cocaine, that he had smoked three or four rocks that day, and that
he had swallowed cocaine.  The physician testified that he was not acting as an
agent for law enforcement and that the police did not dictate the actions of
the hospital staff.

            Appellant
relies on Ferguson v. City of Charleston, 532 U.S. 67 (2001), and Miranda
v. Arizona, 384 U.S. 436 (1966), in support of his contentions.  We agree
with the trial court’s conclusion that the cases cited by appellant are not
controlling in this case.  In Ferguson, the Supreme Court held that the
warrantless, nonconsensual drug-testing performed on pregnant women at a state
hospital pursuant to local policy in order to obtain evidence of criminal conduct
for law enforcement purposes constituted an unreasonable search.  532 U.S. 67. 
In the present case, the tests were not performed for law enforcement purposes
but for the purpose of medical treatment after appellant had ingested an
unknown substance.  See Murray v. State, 245 S.W.3d 37 (Tex. App.—Austin
2007, pet. ref’d) (testing of DWI arrestee’s blood was performed by hospital
staff for purpose of medical treatment).  Furthermore, the Texas Court of
Criminal Appeals has specifically recognized that not all government workers
must be ready to administer Miranda warnings and that Miranda has
been held to be inapplicable to questioning by medical personnel.  Wilkerson
v. State, 173 S.W.3d 521, 528 (Tex. Crim. App. 2005).  The evidence in this
case does not indicate that the hospital staff acted as law enforcement agents
or at the behest of law enforcement.  Appellant’s second issue is overruled. 

Redaction
of Medical Records

            In
his third issue, appellant argues that the trial court abused its discretion in
allowing the medical records to be introduced without redacting the records to
delete the doctor’s diagnosis of “Cocaine abuse” and “Drug abuse – marijuana.” 
The record shows that appellant objected to these statements as being
irrelevant and unfairly prejudicial under Tex.
R. Evid. 403 and 404(b). We agree that the doctor’s diagnosis constituted
inadmissible character-conformity evidence and that the trial court abused its
discretion in refusing appellant’s request to redact the medical records.  See
Tex. R. Evid. 404; Montgomery
v. State, 810 S.W.2d 372 (Tex. Crim. App. 1991).  

When
the error in the admission of evidence is not a constitutional error, it is
subject to harm analysis under Tex. R.
App. P. 44.2(b).  Motilla v. State, 78 S.W.3d 352, 355 (Tex.
Crim. App. 2002).  Under Rule 44.2(b), nonconstitutional errors that do not
affect a defendant’s substantial rights must be disregarded.  A substantial
right is affected when the error had a substantial and injurious effect or
influence on the jury’s verdict.  King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1997).  In light of the record as a whole, we cannot conclude
that the error in the admission of the doctor’s diagnosis substantially
affected the jury’s verdict in this case.  There was other evidence, including
the results of the urinalysis and appellant’s statements to the hospital staff
that he used crack cocaine and had smoked three or four rocks that day,
revealing appellant’s drug use.  Furthermore, the doctor’s diagnosis was not
emphasized or relied upon by the prosecutor.  We hold that the error must,
therefore, be disregarded under Rule 44.2(b).  Appellant’s third issue is
overruled.  

Conclusion

            In
Cause No. 11-09-00252-CR, the judgment of the trial court is reversed, and the
cause is remanded to the trial court.  In Cause No. 11-09-00253-CR, the
judgment of the trial court is affirmed.  

 

 

                                                                                                JIM
R. WRIGHT

                                                                                                CHIEF
JUSTICE

 

November 18,
2010

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]Our Cause No. 11-09-00252-CR and Trial Court Cause No.
CR34857.

 





[2]Our Cause No. 11-09-00253-CR and Trial Court Cause No.
CR34858.





[3]We note that, prior to the filing of a supplemental
clerk’s record containing the letter order, the State had argued that appellant
failed to preserve his suppression issues because he failed to obtain a
ruling.  





[4]We note that the evidence shows appellant was an
overnight guest in the motel room and that the State has not challenged
appellant’s standing to contest the entry.  





[5]We note that Loudd did not testify at appellant’s
trial.