Santos B. RODRIGUEZ, Appellant,

v.

The STATE of Texas, Appellee.

Dennis J. TURNER, Appellant,

v.

The STATE of Texas, Appellee.

Carolyn Martinez BOUSLEY, Appellant,

v.

The STATE of Texas, Appellee.

Robert Owen KING, Appellant,

v.

The STATE of Texas, Appellee.

James CAVANAUGH, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 66816–66820.

Court of Criminal Appeals of Texas,
En Banc.

July 6, 1983.

Robert G. Turner, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Winston E. Cochran, Jr., and David Mendoza, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

OPINION

CLINTON, Judge.

Appellant Rodriguez appeals his conviction for possession of a prohibited weapon.

Appellants Turner, Bousley, King and Cavanaugh appeal convictions for possession of marihuana. The punishment assessed in each case was three days confinement and a fine of $150.00.

Each appellant raises a single ground of error which complains of the trial court's failure to grant their motions to suppress which alleged that the marihuana admitted into evidence was obtained in a warrantless search.[1]

The evidence adduced on the motions to suppress established appellant Carolyn Bousley approached the manager of her apartment building about replacing a dead bolt lock on her door on October 5, 1979. The manager was unable to contact her maintenance man, so she asked her assistant's fiance, Michael Leitner, if he could do it. Leitner went to Bousley's apartment, knocked on the door and was admitted by a "highly intoxicated" Bousley; he began working on the lock. Appellant Santos Rodriguez was sitting on the sofa smoking what Leitner recognized from personal experience to be marihuana.

A few minutes later, appellants Dennis Turner, Robert King and James Cavanaugh arrived at the apartment with a black shaving kit. They sat down at the dining room table which was clearly visible from the door; someone obtained a scale from the kitchen and a clear bag containing "some substance" was removed from the shaving kit. The appellants began piling the substance on the scale and putting it in sandwich size cellophane bags.

Leitner, growing increasingly uncomfortable vis-a-vis this unabashed activity, excused himself, saying he needed more tools. He reported what he had seen and smelled to the manager who contacted her security officer, R.D. Moon.[2] Leitner went back to

Bousley's apartment and continued his work on the lock.

Dressed in plain clothes, Moon approached Leitner and began "making conversation," but appellant Rodriguez came to the door and told the two he would finish up on the lock. Leitner and Moon left.

Back at the manager's office, Moon contacted the Webster police department. In a matter of minutes, Detectives Rusk and Dempsey arrived with patrol officer Hodges. The four officers, led by Rusk, proceeded to the door of Bousley's apartment.

Rusk knocked on the door, shouting "Police Officer."[3] Bousley opened the door looking "very high, intoxicated." Rusk testified as follows:

"I approached the door and I had my badge ready to display. When she opened the door I saw in plain view marijuana [sic], and I could smell the odor of burning marijuana [sic].

\* \* \* \* \* \*

Q: ... [D]id you at anytime bust the door open?

A: No. No sir.

Q: Did you at anytime or in anyway force your way into the apartment?

A: When I saw the marijuana [sic] on the table, yeah, I came in the apartment."

The marihuana was seized; the appellants were arrested and searched. Knuckles were found in Rodriguez's pocket.

Appellants now complain this intrusion into the apartment (which they presuppose constituted a "search") was warrantless, and did not fall within any recognized exception to the warrant requirement as discussed in *Kolb v. State*, 532 S.W.2d 87 (Tex. Cr.App.1976).

▮ We disagree with appellants' presupposition, and believe it necessary to consider the threshold question of whether

1. It is unclear why appellant Rodriguez, who was convicted of possessing "knuckles" pursuant to V.T.C.A. Penal Code, § 46.06(a)(6), complains of the admission of marihuana, since that evidence was not used to convict him. His conviction in our Cause No. 66,816, is accordingly affirmed.

2. Moon was a Webster City police officer at this time and was off duty working as a security guard.

3. The detectives were, of course, dressed in street clothes.

these appellants were "searched" within the meaning of the law, at all.

Only recently we have had an opportunity to explicate the criteria for determining whether one has been subjected to a "search" within the meaning of the Fourth Amendment to the Constitution of the United States in *Liebman and Bloomer v. State,* 652 S.W.2d 942 (Tex.Cr.App.1983). We stated there at 945:

"... [T]his issue depends on whether each appellant can claim a 'reasonable' expectation of privacy which has been invaded, and which entitles him to the protection of the Fourth Amendment.

\*   \*   \*   \*   \*   \*

It is well settled by now that this inquiry embraces two discrete questions, the first of which requires a determination of whether the individual has shown that he seeks to preserve something as private; *Katz,*[4] supra; or restated, whether by his conduct he has exhibited an actual or subjective expectation of privacy. *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)."

Under the facts of this case, we need not linger over this question. Appellants, though inside private living quarters, chose to conduct their illegal activity in an area clearly visible from the door to the outside. Moreover, their activity continued in spite of the fact that the outside door was open and a member of the public was present. Taking no caution whatever to preserve their privacy and, in fact, having invited Leitner in, it is clear these appellants had no subjective expectation of privacy in the apartment. Compare *Liebman and Bloomer,* supra.

Still, appellant contends the officers had no right to enter the apartment to "investigate" reported possession of marihuana. This contention is untenable.

Nothing in our Constitutions prevents a police officer from addressing questions to citizens on the street;[5] it follows that nothing would prevent him from knocking politely on any closed door. Further, nothing in the statutes or governing constitutional provisions requires any citizen to respond to a knock on his door by opening it. Indeed, the very act of opening the door exhibits an intentional relinquishment of any subjective expectation of privacy, particularly when illegal activity may be readily detected by smell and sight by anyone standing at the doorway.[6]

In sum, appellants "knowingly exposed to the public" their activity on the day in question. Since they had no subjective expectation of privacy, we need not address the second question of whether their expectation of privacy was objectively justifiable. See *Liebman and Bloomer,* supra.

We hold appellants were not subjected to a "search" within the meaning of the law. As such, no warrant was required. And since Detective Rusk readily observed appellants' commission of an offense "within his view," their warrantless arrests were lawful. Article 14.01(b), V.A.C.C.P.

The judgments of convictions are affirmed.

ONION, P.J., concurs in result.

---

**4.** *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967) held:

"*What a person knowingly exposes to the public, even in his own home* or office, *is not a subject of Fourth Amendment protection.* But what he seeks to preserve as private even in an area accessible to the public, may be constitutionally protected. [Citations omitted.]"

(All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

**5.** See *Galitz v. State,* 617 S.W.2d 949 (Tex.Cr. App.1981); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (White, Concurring). Accord *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); compare *Merideth v. State,* 603 S.W.2d 872 (Tex.Cr.App. 1980) with *Hull v. State,* 613 S.W.2d 735 (Tex. Cr.App.1981).

**6.** It is incredible that appellants "sought to preserve as private" their activity in the apartment when they opened the door, knowing the visitor was a law enforcement officer.