# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00127-CR

**George Walter Prayer aka George Walter Prayer Jr., Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
NO. 60694, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant George Walter Prayer pleaded guilty to possessing more than four grams of cocaine with intent to deliver, enhanced by a previous felony conviction. *See* Tex. Health & Safety Code Ann. § 481.112 (West 2003). Pursuant to a plea bargain, the trial court assessed punishment at thirty years' imprisonment. In a single issue, appellant contends that the court erred by overruling his pretrial motion to suppress evidence. We will overrule this contention and affirm the conviction.

At the suppression hearing, Killeen Police Officer Brian Ellis testified that he and two other officers were dispatched to a coin-operated laundry at 7:00 p.m. on December 9, 2006. The owner of the laundry told the officers that on several previous occasions, a man had entered the laundry and stolen money from a container of quarters that she kept for making change for her customers. She said that the man had entered the laundry that evening, which prompted her to call

the police, but that she was not sure whether he had taken any money that night. She told the officers that she had followed the man and seen him enter an apartment in a complex a short distance from the laundry. She gave the officers a description of the man and what he was wearing and the number of the apartment.

Ellis testified that he and Officer Steven Eaton began to walk toward the apartment complex, intending to find the suspect and warn him to stay away from the laundry. As they walked, Ellis looked toward the complex and saw, about seventy-five feet away, a man matching the description of the suspect standing on the second-floor landing near apartment twelve, which was the apartment the suspect had been seen to enter. Ellis, who was in uniform, shined his flashlight on the man and said, "Police, come here." When the man did not respond, Ellis repeated this order. Ellis testified that the man walked quickly to apartment twelve, entered it briefly, and then came back outside. Meanwhile, Ellis and Eaton ran up the stairs toward the apartment. When the suspect emerged from apartment twelve, they detained him. The suspect was identified as Brian Moody.

While Eaton kept an eye on Moody, Ellis walked to the door of apartment twelve. Ellis testified that he intended to investigate whether Moody had discarded something in the apartment when he went inside—perhaps stolen quarters, perhaps a weapon. Ellis said that the door to the apartment was slightly ajar, and he could hear loud music inside the apartment. He testified that he knocked on the door firmly, to be heard over the music, and when he did so, the door opened more fully. Ellis testified that he was "overwhelmed" by the odor of burning marihuana. As he looked through the doorway into the apartment, he saw two persons sitting on a couch with loose

2

marihuana and a pipe on a table in front of them. More marihuana and a large water pipe could be seen in the kitchen area. Two other persons, one of whom was appellant, were also in the apartment.

Ellis entered the apartment and ordered everyone inside to put their hands on their heads. Cocaine was found on appellant's person during a subsequent search incident to his arrest. Later, more cocaine was found during a body cavity search at the jail.

Eaton's testimony was largely consistent with Ellis's. Eaton said that Ellis shouted to Moody, "You better not go in that apartment, we're going to kick the door in." Eaton said that the officers had no intention of forcing their way into the apartment, and that the purpose of this warning was to cause Moody to stop running.

Defense witnesses Juan Lopez and Dominique Wooten were among those in apartment twelve on the night in question. They testified that Moody was a stranger to them and that they had been surprised by his entry into the apartment. They said that Moody acted as if he had made a mistake and immediately left, leaving nothing behind. They both testified that the door had been closed completely. They said that they heard no knock before the door burst open and the officer entered the apartment.

The trial court overruled appellant's motion to suppress and later filed written findings of fact and conclusions of law. Consistent with the officers' testimony, the court found that the door of apartment twelve was partially open when Ellis knocked, and that the officer's knock caused the door to open more fully. The court ruled that Ellis: (1) "used a reasonable amount of force to knock on the door of Apartment #12 in order to gain the attention of the occupants within the apartment so they would hear the knock and come to the door," (2) "was in a lawful viewing area

3

when he made the observations into Apartment #12 and observed the marihuana, drug paraphernalia, and smelled burning marihuana," and (3) "was able to immediately identify the observed marihuana and drug paraphernalia as illegal contraband" based on his training and experience. The court ruled that the cocaine was seized during a lawful search incident to appellant's arrest for possession of the observed drugs and drug paraphernalia.

Appellant contends that the trial court erred by applying the plain view doctrine in this case. Under this doctrine, an officer may, without a warrant, seize an item that is in plain view if: (1) the officer has a right to be where he is when he sees the item, and (2) it is immediately apparent to the officer that the item is contraband or evidence of criminal activity. *Ramos v. State*, 934 S.W.2d 358, 365 (Tex. Crim. App. 1996). Appellant's argument is based on the first factor. He argues that Ellis was unlawfully standing in the open doorway of apartment twelve when he saw the contraband inside the apartment. Appellant argues that this illegality tainted the officer's entry into the apartment and appellant's subsequent arrest and search.

When we review a ruling on a motion to suppress evidence, we defer to the trial court's factual determinations but review de novo the court's application of the law to the facts. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We will sustain the trial court's ruling admitting evidence if the ruling is reasonably supported by the record and correct on any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

Appellant concedes that Ellis was lawfully entitled to knock on the apartment door in hopes of speaking to the occupants. *See Rodriguez v. State*, 653 S.W.2d 305, 307 (Tex. Crim. App. 1983). He urges, however, that Ellis was not entitled to push open the door without a warrant

4

in order to see who and what was inside. This argument ignores the trial court's finding that the door was already partly open when Ellis knocked, and that Ellis "used a reasonable amount of force to knock on the door . . . in order to gain the attention of the occupants." In other words, the trial court found as a fact that the officer merely knocked on the door, which caused it to open further, and did not intentionally push or otherwise force open the door. We must defer to that finding.

Based on the facts as the trial court found them, we conclude that Ellis was lawfully positioned to see the contraband that was in plain view inside apartment twelve. Appellant does not otherwise challenge the trial court's ruling that he was lawfully arrested and searched.

The judgment of conviction is affirmed.

 

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed:   August 8, 2008

Do Not Publish