# DISSENTING OPINION

No. 04-10-00744-CR

Marcos **TURRUBIATE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 8, Bexar County, Texas
Trial Court No. 317830
Honorable George H. Godwin, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice
Dissenting Opinion by: Steven C. Hilbig, Justice

Sitting:        Karen Angelini, Justice
                Sandee Bryan Marion, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:  February 15, 2012

The majority has withdrawn its original opinion and judgment dated November 9, 2011 and issued a new opinion.  By way of its new opinion, the majority denies the State's motion for rehearing.  I respectfully dissent from the denial of the motion for rehearing and to the majority's opinion and judgment.  I believe the constitutional requirements of probable cause and exigent circumstances were satisfied when Deputy Chavarria entered the premises, and the evidence supports the trial court's implied finding that Turrubiate voluntarily gave the marijuana to the deputy.  Accordingly, the judgment of the trial court should be affirmed.

## BACKGROUND

As set forth in the majority opinion, the central controversy in this case involves the actions of Deputy Chavarria and how he gained access to Turrubiate's residence.  Because Deputy Chavarria entered the residence without a warrant, his entry is presumptively

unreasonable under the Fourth Amendment. *See Michigan v. Fisher*, 130 S. Ct. 546, 548 (2009); *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007). However, entry based on probable cause coupled with exigent circumstances does not violate the Fourth Amendment. *Estrada v. State*, 154 S.W.3d 604, 609 (Tex. Crim. App. 2005).

No findings of fact were filed by the trial court. We will imply findings of fact to support the trial court's decision as long as the implied findings are supported by the record. *Hereford v. State*, 339 S.W.3d 111, 118 (Tex. Crim. App. 2011).

### PROBABLE CAUSE

Because the majority concludes no exigent circumstances existed, it simply assumed without deciding Deputy Chavarria had probable cause when he entered the residence. Because I believe exigent circumstances existed, I will address the issue of probable cause.

Child Protective Services investigator Christopher Lopez testified he went to the Turrubiate residence to investigate a complaint that marijuana was being used in the presence of a six-month old baby. Lopez knocked on the door and Turrubiate answered. Although Turrubiate did not fully open the door, Lopez noticed a "very, very strong smell of marijuana coming from the home." When Turrubiate denied either the child or its mother was present in the home, Lopez left. He called his supervisor and reported the strong odor of marijuana. His supervisor instructed Lopez to call the sheriff's office and obtain its help to determine whether the child was present in the home. Lopez testified that he returned approximately one hour later accompanied by Deputy Chavarria. He knocked on the door again and noticed "a very strong smell of marijuana" coming from the residence when Turrubiate opened the door. Deputy Chavarria testified that as soon as Turrubiate opened the door, he also noted a "very strong, fresh odor of marijuana" but not from marijuana smoke. In his report, Deputy Chavarria described the

odor as a "strong fresh odor of marijuana." Upon detecting the odor of marijuana, Deputy Chavarria pushed his way into the residence with this Taser drawn, handcuffed Turrubiate, and conducted a quick protective sweep of the premises. After performing the protective sweep, the deputy removed the handcuffs and began to question Turrubiate.

Turrubiate argues that smell alone does not provide probable cause. He relies on the statement in *State v. Steelman*, 93 S.W.3d 102, 108 (Tex. Crim. App. 2002), that "[t]he odor of marijuana, standing alone, does not authorize a warrantless search and seizure in a home." However, the court later explained this statement in *Estrada*:

> There is, however, a distinction between what is necessary to establish probable cause, and what is required for an officer to conduct a warrantless search of an individual's residence. In *Steelman*, we held that the odor of marijuana alone is not enough to allow officers to conduct a warrantless search. This is because it is clear under both United States constitutional law and Texas constitutional law that a warrantless search of a residence is illegal unless probable cause exists in combination with exigent circumstances.

154 S.W.3d at 608. The court went on to state that the odor of marijuana was an element in determining whether probable cause existed. *Id.* at 609. It also noted that "[o]ur holding in *Steelman* does not support the proposition that marijuana odors alone cannot constitute probable cause for a warrantless search." *Id.* at 608.

Many courts have held that the smell of marijuana constitutes probable cause in cases involving search of automobiles. *See U.S. v. McSween*, 53 F.3d 684, 686 (5th Cir.), *cert. denied*, 516 U.S. 874 (1995) ("the smell of marihuana alone may be ground enough for a finding of probable cause"); *U.S. v. Marshall*, 878 F.2d 161, 163 (5th Cir. 1989) ("once the officer detected the odor of marijuana, probable cause existed"); *Razo v. State*, 577 S.W.2d 709, 711 (Tex. Crim. App. 1979) (holding smell of marijuana provided probable cause for search of vehicle); *Dickey v. State*, 96 S.W.3d 610, 613 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (same); *See also Joseph v. State*, 3 S.W.3d 627, 634-35 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (smell of

marijuana establishes probable cause for search and may establish probable cause for arrest).

Because the probable cause standard should be the same whether we consider a search of a

residence or of a vehicle, I would hold probable cause existed in this case.[1]

## EXIGENT CIRCUMSTANCES

As discussed above, exigent circumstances must accompany probable cause in order for a

warrantless search of a residence to be reasonable under the Fourth Amendment.   One

circumstance recognized as exigent is the entry into a location to prevent the imminent

destruction of evidence.   *Kentucky v. King*, 131 S. Ct. 1849, 1853-54 (2011); *Estrada*, 154

S.W.3d at 610.   The majority relies on the test adopted by the Court of Criminal Appeals in

*McNairy v. State* to determine whether law enforcement officers had a reasonable belief that

evidence "might be destroyed or removed *before they could obtain a warrant*."

> Circumstances which have seemed relevant to courts include (1) the degree of
> urgency involved and the amount of time necessary to obtain a warrant . . .; (2)
> reasonable belief that the contraband is about to be removed . . .; (3) the
> possibility of danger to police officers guarding the site of the contraband while a
> search warrant is sought . . .; (4) information indicating the possessors of the
> contraband are aware that the police are on their trail . . .; and (5) the ready
> destructibility of the contraband and the knowledge that efforts to dispose of
> narcotics and to escape are characteristic behavior of persons engaged in the
> narcotics traffic.

835 S.W.2d 101, 107 (Tex. Crim. App. 1991) (quoting *United States v. Rubin*, 474 F.2d 262, 268

(3d Cir. 1973)) (emphasis added).   However, I believe this test has been significantly altered by

the Supreme Court's holding in *King*.

In *King*, the United States Supreme Court considered whether the exigent circumstances

exception to the warrant requirement applies when the fear of destruction of evidence was

---

[1] I note the initial impetus for Lopez to approach the residence was a report of marijuana use by the occupants of the
residence.  Nothing in the record identifies the source of this information.  Although we decide probable cause by
examining the "totality of the circumstances," this information adds little to the probable cause determination.

prompted by the conduct of the police. 131 S. Ct. at 1854. The facts in *King* are fairly straight-forward. The police conducted a controlled buy of cocaine and sought to intercept the seller before he entered an apartment. *Id.* Uniformed officers followed the suspect into a breezeway in the apartment complex. There were two apartments on opposite sides of the breezeway and the police were not sure which apartment the suspect entered. *Id.* Police approached one door because they smelled marijuana coming from the apartment. They pounded on the door and announced their presence in a loud voice, stating "This is the police" or "Police, police, police." *Id.* Hearing movement from within the apartment and believing drug-related evidence was about to be destroyed, the police kicked in the door, found three people in the apartment, conducted a protective sweep for further suspects, and found marijuana and powder cocaine in plain view.[2] *Id.* The Kentucky Supreme Court held that exigent circumstances did not support the warrantless entry because "it was reasonably foreseeable that the occupants would destroy evidence when police knocked on the door and announced their presence" and thus the police impermissibly created the exigency. *Id.*

The United States Supreme Court granted certiorari. The Court recognized that lower courts had developed the "police-created exigency" exception to the exigent circumstances rule and discussed various tests devised by the courts to determine if the exception applies. *Id.* at 1857, 1858-61. The Supreme Court ultimately concluded the only relevant factor to consider is whether police gained entry into the premises "by means of an actual or threatened violation of the Fourth Amendment." *Id.* at 1862. However, it is instructive to review the factors or tests the court rejected. These include whether the police acted in bad faith to avoid the warrant requirement, whether it was reasonably foreseeable that drug suspects would attempt to destroy

---

[2] The police apparently chose the wrong apartment. They later entered the second apartment and located the original suspect. 131 S. Ct. at 1855.

evidence because police chose to knock on the door and announce their presence, whether the tactics employed by the police were contrary to good or standard law enforcement practices, and germane to this case, whether police, having probable cause, had ample time to obtain a warrant before knocking on the door. *Id.* at 1859-61. The court noted that some courts "fault law enforcement officers if, after acquiring evidence that is sufficient to establish probable cause to search particular premises, the officers do not seek a warrant but instead knock on the door and seek either to speak with an occupant or to obtain consent to search." *Id*. at 1860. The court held "[t]his approach unjustifiably interferes with legitimate law enforcement strategies." *Id*.

In light of the Supreme Court's reasoning, I believe two of the *McNairy* factors for determining the existence of exigent circumstances — the degree of urgency involved and the amount of time necessary to obtain a warrant, and the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought — are not constitutionally required or applicable. These factors involve weighing the risks of destruction of the evidence and safety to the police versus the amount of time it takes to get a warrant. The court's analysis in *King* obviates the need to consider these factors because the court held that law enforcement is not required to obtain a warrant as soon as probable cause exists and is not prohibited from knocking on a door once there is probable cause.[3] Thus, in determining whether exigent circumstances existed, we are left with (1) reasonable belief that the contraband is about to be removed; (2) information indicating the possessors of the contraband are aware that the police

---

[3] The majority misunderstands my arguments about the Supreme Court's holding in *King* as indicated by the comments in footnote 2. *King* did not alter the requirement of probable cause and exigent circumstances before entry without a warrant. Contrary to the majority's assertion, my interpretation and application of *King* does not "swallow whole" the exigent circumstances exception. It is easy to imagine circumstances where a reliable informant provides probable cause to search a residence, the police knock on the door and the occupant opens the door. He does not react to the presence of the police and evidence of the contraband is not apparent. Because there is nothing to indicate the occupant is aware of the police's *knowledge* that he possesses contraband, the police could not form a reasonable belief that the contraband is about to be destroyed or removed. Entry into the premises would not be supported by exigent circumstances.

are on their trail; and (3) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic. *See McNairy*, 835 S.W.2d at 107.

I believe factors (1) and (3) are essentially the same. Whether the contraband is "removed" by destruction or removed to another location, the essential issue is whether police must act quickly to secure the contraband. And in this age, a court could take judicial notice that efforts to dispose of narcotics to escape discovery is characteristic behavior of persons engaged in the narcotics traffic. *See* TEX. R. EVID. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is . . . generally known within the territorial jurisdiction of the trial court"); *King*, 131 S.Ct. at 1857 ("[d]estruction of evidence issues probably occur most frequently in drug cases because drugs may be easily destroyed by flushing them down a toilet or rinsing them down a drain," and in most cases, "the reason for the destruction is fear that the evidence will fall into the hands of law enforcement"). The key issue is whether those possessing the contraband are aware that police are on their trail. If so, given the general knowledge that those engaged in the trafficking of narcotics are likely to take efforts to dispose of the drugs, it would be reasonable to form a belief that the contraband will be removed or destroyed without immediate intervention by the police.

Here, Deputy Chavarria testified to this very concern, stating that he entered the premises to prevent the marijuana from being destroyed and to secure it for "the judicial procedure." He testified he entered the residence to conduct further investigation and did not have the intent to arrest anyone. He stated he did not leave to secure a warrant because the evidence would have been destroyed. This record supports the trial court's implied finding that exigent circumstances existed because the deputy reasonably feared the destruction of contraband or evidence. Because

both Deputy Chavarria and Lopez testified to the strong smell of marijuana, it was reasonable for

the trial court to infer that Turrubiate was aware of the smell. And it was reasonable for the court

to conclude Turrubiate was aware the police were "on his trail" when he opened the door. Given

the strong odor of marijuana, the trial judge could infer that Turrubiate assumed the police

noticed the smell. When asked whether the deputy would have been within Turrubiate's view as

he opened the door, Lopez responded "I believe so. I mean, he was standing right next to me."[4]

The majority concludes these facts do not create exigent circumstances. Instead, the

majority points out Turrubiate willingly opened the door both times and did not make any furtive

movements indicating he was about to destroy any evidence. Although furtive conduct is a

factor to consider in deciding whether exigent circumstances exist, I do not believe the lack of

furtive movements or audible indications of imminent destruction of evidence is dispositive. The

question to be answered in this case is whether there is sufficient evidence in the record to

support the trial court's implied finding that Deputy Chavarria formed a reasonable belief that

evidence or contraband would be removed or destroyed and entry into the premises was

immediately necessary to prevent that removal or destruction. And, as discussed above, the

question should be answered in the affirmative because it was reasonable to conclude Turrubiate

knew of the deputy's presence when Turrubiate opened the door,[5] and the odor of marijuana was

apparent to all. *See Stone v. State*, 279 S.W.3d 688, 692 (Tex. App.—Amarillo 2006, pet. ref'd)

("apartment occupants must have been aware of the officers' presence before it can be said that

---

[4] In footnote 4, the majority attacks my conclusion that Turrubiate was aware that police were "on his trail." Simply put, given the strong odor of marijuana, it was reasonable for the trial court to conclude that Turrubiate assumed the deputy noticed the smell and the deputy knew it came from his residence. Contrary to the majority's argument, it would not matter if Turrubiate thought the purpose of the deputy's visit was to investigate his girlfriend. Rather, the important inquiry is whether Deputy Chavarria could form a reasonable belief that Turrubiate would take action to destroy evidence or contraband because of the deputy's presence.

[5] Turrubiate testified during the motion to suppress that he looked out the peephole of the front door and did not see the deputy, contending the deputy was hiding out of sight. Based on the trial court's ruling, we infer the court did not credit this testimony.

knowledge of the officers' presence somehow influenced the occupants' actions"). As the Court

of Criminal Appeals has observed:

> Nothing in our Constitutions prevents a police officer from addressing questions
> to citizens on the street; it follows that nothing would prevent him from knocking
> politely on any closed door. Further, nothing in the statutes or governing
> constitutional provisions requires any citizen to respond to a knock on his door by
> opening it. Indeed, the very act of opening the door exhibits an intentional
> relinquishment of any subjective expectation of privacy, particularly when illegal
> activity may be readily detected by smell and sight by anyone standing at the
> doorway.

*Rodriguez v. State*, 653 S.W.2d 305, 307 (Tex. Crim. App. 1983) (footnotes omitted).

Having concluded both probable cause and exigent circumstances existed when Deputy

Chavarria entered the apartment, was the seizure of the marijuana lawful? Yes. Deputy

Chavarria testified that he removed the handcuffs from Turrubiate after he conducted a

protective sweep and ascertained no weapons were within reach. Deputy Chavarria stated he

began his investigation into the smell of marijuana by asking Turrubiate if there was marijuana

present. Turrubiate began to cry, admitted he had marijuana, and stated he would sign a consent

to search form. Deputy Chavarria next asked Turrubiate where the marijuana was located, and

Turrubiate stated it was in a blue backpack next to where he was seated. Turrubiate signed the

consent form, and at the deputy's request, retrieved the marijuana from the backpack. During his

testimony at the hearing on the motion to suppress, Turrubiate admitted he gave consent to

Deputy Chavarria to retrieve the marijuana. The State met its burden to prove by clear and

convincing evidence that Turrubiate consented to the search. *See State v. Ibarra*, 953 S.W.2d

242, 245 (Tex. Crim. App. 1997).

In sum, the record supports the trial court's implied findings, which in turn support the

conclusions that Deputy Chavarria's entry was supported by probable cause and exigent

circumstances and the seizure of the marijuana did not violate the Fourth Amendment.

I realize this result might be seen by some as authorizing a general search based only on the smell of marijuana. But my conclusion is based on the unique facts of this case and existing precedents that lead to this logical result. Even when probable cause and exigent circumstances are present, any search is limited to the exigency. *See Gutierrez*, 221 S.W.3d at 686-87 (holding that "full-blown" search of house not authorized by exigency created when police observed drugs while retrieving stolen laptop from defendant's home, noting that the exigent circumstances exception to the warrant requirement "does not grant the police the unfettered discretion to take any course of action, however disproportionate it may be to the perceived exigency"). Here, Deputy Chavarria did not conduct a "full-blown" search of Turrubiate's residence. His reaction to the perceived exigency was to ensure his safety by initially restraining Turrubiate and conducting the protective sweep, then removing the handcuffs and investigating the smell by asking Turrubiate if marijuana was present. Turrubiate voluntarily answered the question and consented to the search that resulted in the seizure of the marijuana. Under these facts, we need not discuss or explore the limits the Fourth Amendment would place upon any search conducted after entry into the home.

## CONFRONTATION CLAUSE

In his second point of error, Turrubiate contends the trial court violated his right of confrontation during the hearing on the motion to suppress by admitting Deputy Chavarria's police report into evidence, when the deputy was not present to testify. I would overrule this point and hold the report was admissible at the pretrial suppression hearing. *See Ford v. State*, 305 S.W.3d 530, 535-541 (Tex. Crim. App. 2009); *Graves v. State*, 307 S.W.3d 483, 489 (Tex.

App.—Texarkana 2010, pet. ref'd); *Vanmeter v. State*, 165 S.W.3d 68, 74 (Tex. App.—Dallas 2005, pet. ref'd).

For these reasons, I would affirm the trial court's judgment.

Steven C. Hilbig, Justice

Publish