

# NUMBER 13-11-00583-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

GONZALO TERAN,                                                                 Appellant,

v.

THE STATE OF TEXAS,                                                              Appellee.

## On appeal from the 347th District Court
## of Nueces County, Texas.

## MEMORANDUM OPINION

## Before Chief Justice Valdez and Justices Garza and Vela
## Memorandum Opinion by Chief Justice Valdez

By one issue, appellant, Gonzalo Teran, challenges his conviction for intentionally or knowingly possessing cocaine in an amount of 400 grams or more, a first-degree felony, arguing that the trial court erred in denying his motion to suppress. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(e) (West 2010).  We affirm.

# I. BACKGROUND

The following facts were developed in a pre-trial hearing on appellant's motion to suppress. In late September or early October 2009, Corpus Christi police arrested Manual Vargas for possessing cocaine. Vargas identified appellant as his source of supply. Vargas told police that appellant had the cocaine underneath the console of his vehicle, though Vargas was not sure of the make or model of the vehicle or its license number.

On January 11, 2010, at approximately 4:00 p.m., police officers Lonnie Garcia and Robert Perez drove to appellant's residence in Corpus Christi. The officers traveled in a marked police vehicle and were wearing their uniforms, which identified them as police officers. When they arrived at appellant's home, the officers drove up the driveway toward the rear of the residence, where appellant's vehicle, a Ford Expedition, was parked and partially visible from the street.

There was conflicting testimony from different witnesses about what happened next. Officer Perez testified that he and Officer Garcia exited their vehicle and paused at the corner of the residence before proceeding to the doorway located at the rear of the residence. Officer Garcia, in contrast, stated that both officers proceeded directly to the rear door. When questioned as to why they had not gone to the front door of the residence, Officer Perez testified that it appeared that the front door had not been in use for some time. In contrast, Officer Garcia said that they just decided to go to the back because the vehicle they were seeking was there.

According to both officers, Officer Garcia knocked on the back door and appellant came to the door. Officer Garcia spoke to appellant and after quickly

explaining that they were there conducting a drug investigation, he obtained oral consent to search the Expedition that was parked by the rear door. Officer Perez testified that appellant had not been arrested or detained at the time they requested consent to search his vehicle. Officer Perez searched the vehicle, which he testified was unlocked, and within "10 seconds" found the cocaine within the vehicle. Even though a written form for consent to search was readily available at the time, appellant was not given the form or asked to sign it until after the search. When asked why this was done, Officer Garcia replied, "just because."

During cross examination of the officers, their testimony established the following: (1) the officers had no search or arrest warrant; (2) they did not tell appellant that they did not have a warrant; (3) appellant had not acted suspiciously or in a threatening manner; (4) appellant was never told he could refuse consent to search; (5) appellant was not *Mirandized* before consenting to the search, *see Miranda v. Arizona*, 384 U.S. 436, 473 (1966); and (6) the consent appellant gave was in response to a police request.

There was also testimony from three other witnesses who were directly next door to appellant's residence and saw the events as they unfolded. Carlo Gonzalez related that he had been next door looking at a vehicle he was attempting to buy for parts or salvage. He testified that he watched as police drove into appellant's driveway and two police officers exited their vehicle and walked toward the back of appellant's residence. He further testified that before the officers made contact with appellant, one of them opened the door to the Expedition, looked in it, and then slowly closed the door as he

3

spoke to the other officer.  Thereafter, the officers went to the back of the home, made contact with appellant, and came back and again searched the Expedition.

Juan Galvan testified that he worked with Carlo Gonzalez and together they "scalp for cars."  He also witnessed police drive into appellant's driveway, open the Expedition's door, look and reach into the vehicle—all before approaching appellant and engaging in a conversation with him.  He described, just as Gonzalez, how the police quietly went into the Expedition and later, in appellant's presence, went into it again and took something out.

Florinda Ortiz, appellant's next-door neighbor, also testified.  Ortiz lived together with her husband of 55 years directly next door to appellant, where both Gonzalez and Galvan had been viewing a vehicle.  She likewise saw both officers arrive at appellant's residence and go to the Expedition before they spoke with appellant.  She related that one of the officers appeared to be looking for something within the vehicle.  Afterwards, the officers went to the back of the residence and appellant came outside.  The police then went into the vehicle again.

At the end of the suppression hearing, the trial court indicated that it would take the matter under advisement rather than make an immediate ruling.  Subsequently, the trial court denied appellant's motion to suppress by written order containing no findings of fact or conclusions of law.  Thereafter, appellant made an open plea, and the trial court deferred adjudication, placing appellant on a ten-year term of community supervision.

## II. DISCUSSION

In his sole issue on appeal, appellant contends that the trial court erred in denying his motion to suppress because the testimony showed that police searched a parked vehicle located on appellant's property and thereby discovered cocaine before obtaining oral consent for the search. Moreover, according to appellant, the subsequent oral consent was not voluntary or valid because the totality of the circumstances showed that appellant was not *Mirandized* and was not informed of his right to refuse consent or of the fact that he was a target of a police investigation.

### A. Standard of Review

The standard of review for suppression of evidence is as follows:

> When reviewing the ruling on a suppression motion, the trial judge's determination of facts—if supported by the record—is afforded almost total deference. Regardless of whether the judge granted or denied the motion, appellate courts view the evidence in the light most favorable to the trial judge's ruling. The prevailing party is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. We review a trial court's application of the law of search and seizure to the facts de novo. We will sustain the trial judge's ruling if that ruling is reasonably supported by the record and is correct on any theory of law applicable to the case.

*State v. Weaver*, 349 S.W.3d 521, 525 (Tex. Crim. App. 2011) (citations omitted).

In addition, when there are no written findings explaining the factual basis for the trial judge's decision, we imply findings of fact that support his ruling so long as the evidence supports those implied findings. *Meekins v. State*, 340 S.W.3d 454, 460 (Tex. Crim. App. 2011).

### B. Applicable Law

The Fourth Amendment protects people and not places. *Long v. State*, 532 S.W.2d 591, 593 (Tex. Crim. App. 1975). What is reasonable within the meaning of the

5

Fourth Amendment depends on the facts and circumstances of each case. *Id.* at 596. Nothing in our Constitutions prevents a police officer from addressing questions to citizens on the street; it follows that nothing would prevent him from knocking politely on any closed door. *Cornealius v. State*, 900 S.W.2d 731, 733 (Tex. Crim. App. 1995) (citing *Rodriguez v. State*, 653 S.W.2d 305, 307 (Tex. Crim. App. 1983)). The Court of Criminal Appeals has held that anyone, be it law enforcement officer or common citizen, has the right to approach an appellant's front door. *Id.* at 734-34 (citing *Bower v. State*, 769 S.W.2d 887, 897 (Tex. Crim. App.), *cert. denied*, 492 U.S. 927 (1989), *overruled on other grounds*, *Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991)).

Except in certain carefully defined classes of cases, a search of private property without proper consent is unreasonable unless it has been authorized by a valid search warrant. *State v. Weaver*, 349 S.W.3d 521, 525 (Tex. Crim. App. 2011). The Supreme Court has "long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Id.* at 525-26 (quoting *Florida v. Jimeno*, 500 U.S. 248, 250-51 (1991)). Although consent must be positive, it may be given orally or by action, or it may be shown by circumstantial evidence. *Id.* at 526. The validity of an alleged consent to search is a question of fact to be determined from the totality of the circumstances. *Id.* Under Texas law, the State must prove voluntary consent by clear and convincing evidence. *Id.*

The trial judge must conduct a careful sifting and balancing of the unique facts and circumstances of each case in deciding whether a particular consent search was voluntary or coerced. *Meekins*, 340 S.W.3d at 459. Because issues of consent are

necessarily fact intensive, a trial court's finding of voluntariness must be accepted on appeal unless it is clearly erroneous. *Id.* at 460.

### C. Analysis

As a preliminary matter, we are faced with conflicting testimony about whether the police officers entered the vehicle for the first time before or after requesting and obtaining appellant's consent. The testimony from the police officers was that consent was obtained prior to their entry and search, but three other witnesses testified that the police entered the vehicle prior to speaking to appellant.

In a motion to suppress hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Accordingly, appellant has acknowledged, and we agree, that the trial court has the discretion to "believe or disbelieve all or part of a witness's testimony, even if that testimony is not controverted." *Id.* Given that there are no written findings explaining the factual basis for the trial judge's decision, we must imply findings of fact that support his ruling so long as the evidence supports those implied findings. *See Meekins*, 340 S.W.3d at 460. On this record, the evidence supports an implied finding that the police did not enter or search the vehicle until after appellant consented to the search.

Next, we must decide whether the evidence supports an implied finding that appellant gave voluntary consent to the search of the Expedition. In deciding whether consent to search was voluntarily given, we follow the Supreme Court's discussion in *Schneckloth*. *See id.* at 464 n.44 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226,

(1973)). In *Reasor v. State*, 12 S.W.3d 813 (Tex. Crim. App. 2000), the Texas Court of

Criminal Appeals stated:

> By looking at the circumstances leading up to the search, the reaction of the accused to pressure, and any other factor deemed relevant, a trial court can determine whether the statement of consent was given voluntarily. Some relevant factors the Supreme Court has taken into consideration in past cases are: the youth of the accused, the education of the accused, the intelligence of the accused, the constitutional advice given to the accused, the length of the detention, the repetitiveness of the questioning, and the use of physical punishment.

*Id.* at 818 (citing *Schneckloth*, 412 U.S. at 226). The court specifically stated that a trial

court can determine voluntariness based on these relevant factors. *Id.*

In addition, some Texas courts of appeals have set out an even more elaborate

list of possible factors that trial judges may consider. *Id.* Several factors are to be

examined in order to determine whether an appellant freely and voluntarily consented:

(1) whether, and to what extent, officers exhibited a show of force, including a display of

weapons; (2) whether the actions of the arresting officers can be classified as flagrant

misconduct; (3) whether the police threatened to obtain a search warrant if the detainee

did not acquiesce, or whether the police claimed a right to search; (4) whether police

first gave appellant his *Miranda* warnings; (5) whether the arrest was made in order to

obtain consent; (6) whether appellant knew that he could refuse to allow a search; (7)

whether consent was first offered by appellant or was in response to police request; (8)

appellant's education, intelligence, and physical condition; and (9) the proximity of the

consent to the arrest, since an intervening time period can provide a degree of

attenuation of the taint. *See Meekins*, 340 S.W.3d at 464 n.44 (citing *Frierson v. State*,

839 S.W.2d 841, 851 (Tex. App.—Dallas 1992, pet. ref'd); *State v. Williams*, 312

S.W.3d 276, 284 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (listing factors that

8

courts may use to determine the voluntariness of consent, including: "(1) whether the consenting person was in custody; (2) whether the suspect was arrested at gunpoint; (3) whether the suspect had the option of refusing consent; (4) the constitutional advice given to the suspect; (5) the length of detention; (6) the repetitiveness of the questioning; and (7) the use of physical punishment" as well as the suspect's age, intelligence, and education").

Appellant's birth date is January 10, 1964, and he was thus in his late 40s at the time in question. The record is silent as to appellant's education and intelligence. There is no indication in the accounts of any of the witnesses that the officers exhibited a show of force. Although the officers were carrying holstered firearms, there is no indication that they drew their weapons or otherwise displayed them at any point during the encounter. Furthermore, the actions of the officers in knocking on appellant's backdoor to request consent to search a vehicle parked on the premises is not "flagrant misconduct." *See Cornealius*, 900 S.W.2d at 733 ("Nothing in our Constitutions prevent a police officer from addressing questions to citizens on the street; it follows that nothing would prevent him from knocking politely on any closed door.").

As noted above, appellant did not volunteer the consent to search the vehicle, but responded to the request of the police officers. There is nothing in the record to show that the police threatened to obtain a search warrant if the appellant did not acquiesce to the search, nor does the record indicate that the police claimed a right to search. Appellant was not given *Miranda* warnings before the officers requested his consent to search, but we also note that appellant had not been detained or arrested at that time. Appellant voluntarily opened the door to speak to the officers, and it appears

9

appellant could have closed the door and ended the encounter at any time prior to giving his consent.

According to appellant, the officers did not expressly inform him of his right to refuse the consent. We note that the relevant factor is not whether the officers expressly informed appellant of this right, but rather, whether appellant knew he could refuse consent. *See Meekins*, 340 S.W.3d at 464 n.44. Given that appellant voluntarily opened the door to speak to the officers and that he had not been arrested or detained at the time the consent was requested, there is a reasonable basis for the trial court to have concluded that appellant had sufficient knowledge of his right to refuse consent. Furthermore, appellant's actions in signing the written consent after the search had taken place and after the police had discovered the cocaine provides some measure of additional assurance that the search was consensual and not coerced.

As the prevailing party, the State is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *See Weaver*, 349 S.W.3d at 525. Viewing the evidence in the light most favorable to the trial judge's ruling, we conclude that appellant's motion to suppress was properly denied. Appellant's issue is overruled.

### III. CONCLUSION

The judgment of the trial court is affirmed.

_____
ROGELIO VALDEZ
Chief Justice

Do not Publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
21st day of June, 2012.

10